## STATE v. BOLLN, ET AL.

## IN RE DRAWING AND SUMMONING OF PETIT JURY.

RESERVED QUESTIONS—JURIES—JURY LIST—QUALIFICATION OF JURY-MEN—DUTY OF ASSESSOR—JURY COMMISSIONERS—STATUTES AND STATUTORY CONSTRUCTION — PRESUMPTIONS — ILLEGAL JURY LIST, POWER AND DUTY OF COURT — CONSTITUTIONAL LAW — DISTRICT COURTS.

1. Where a jury was required at a term of the District Court, and a motion was presented by the prosecuting attorney attacking the validity of the jury lists and the constitutionality of the law providing for the selection of jurors, there was a proceeding in that court, within the meaning of the statute authorizing the reservation of important and difficult questions arising in an action or proceeding pending before the District Court for the decision of the Supreme Court, especially where the same motion was filed in a pending criminal case.

2. The business of the District Court requiring the attendance of a jury and none being in attendance, and the statute in such case requiring the court to order the drawing of a jury from a certain box required to contain the names of the qualified jurymen of the county as returned by the jury commissioners, it becomes necessary for the court to inquire and determine whether the box contains a legal list of jurymen from which the drawing can be made.

3. While it is the plain duty of the County Assessor to obtain and enter upon the assessment roll certain information touching the qualifications of the male persons assessed as jurymen, the statute so requiring is directory only, and a failure of the assessor to obtain and enter the required information will not invalidate a jury list made up from the assessment roll.

4. Statutes such as those requiring an assessor to ascertain and enter upon the assessment roll information respecting the qualification of the assessed persons for jury duty, and prescribing the duties of jury commissioners, or officers acting *ex-officio* in that capacity, are directory, and a strict compliance with all their requirements is not essential to securing a legal jury.

5. It is a necessary qualification of a juryman that he must have been assessed upon the last assessment roll of the county, and no authority is conferred upon the jury commissioners to make a jury list except from such roll.

6. The jury list must consist of the names on the assessment roll of all persons whom the officers required by statute to make the list believe to be competent and qualified to serve.

7. A substantial compliance with the statutory requirements is necessary, namely, an assessment roll must have been made from which to select, the selection must be made from the names on such roll, and must consist of substantially all whom the selecting officers believe to be qualified.

8. The mere absence of a name or names from the list which should properly be upon it, or the presence of a name or names not upon the assessment roll, without proof that such errors occurred corruptly, would not vitiate the list.

9. No authority is conferred by law upon the officers required to make the jury list to arbitrarily select a designated number of names and return the same as a list under the statute.

10. The presumption is that the officers required to make a jury list have performed their duty; but if it be brought to the knowledge of the court by adequate proof that they have purposely, either from a mistaken idea of their powers and duties or otherwise, prepared a list substantially different from that required by law, in the respect that it is a mere selection from the names which should legally constitute the list, and that there has been intentionally omitted the great mass of the names of those whom they knew or believed to be qualified, such a list would not be a legal jury list.

11. In the case mentioned in the preceding paragraph, it would be the duty of the court to find the list illegal, and refuse to order the drawing of a panel from it.

12. From the nature of the duties imposed it is impossible to frame an accurate definition, applicable in all cases, of what would constitute a substantial compliance with the statute. But an intentional disregard of the statute, by means of erroneous interpretation or otherwise, cannot be deemed a substantial compliance with it.

13. Since the officers required to make the jury list are required to place thereon only those whom they *believe* to possess the necessary qualifications, the statute commits that question to their judgment and decision, and it is no ground for an attack upon a list so made up that others might disagree with them in regard to the qualifications of persons whose names are or are not on the list.

14. On reserved questions the Supreme Court has no jurisdiction to weigh the evidence or pass upon issues of fact, but only to decide questions of law.

15. On the question whether the particular list involved was a legal and valid list or not, there being no finding of fact by the District Court, but only an *ex-parte* affidavit alleging the existence of certain conditions, it is *held* that the question is not properly before the court, and the same is not decided.

16. Should the District Court find that the list is not in substantial compliance with the statute, it would be its duty to quash the panel of jurors drawn from it, and provide for a legal jury, if one is required.

17. When it became necessary for the court to draw a panel of jurors for the business of the term, the question then arose whether there was a legal jury list, and the motion and affidavit of the prosecuting attorney were sufficient to put the court on inquiry, and call for its determination of the question whether there had been such a substantial departure from the requirements as would render the list illegal.

18. It is incumbent upon the District Court to provide itself with the necessary agencies for the dispatch of the business coming before it, and in inquiring and determining whether the jury list is legal or not, it is not very material whether it acts on its own motion, or moved by the suggestion or request of some officer or party interested in the business of the term. Hence it is not necessary to decide whether the motion of the prosecuting attorney attacking the list, a panel having been drawn therefrom, is a proper challenge to the array, or whether such a challenge is permissible under the statute.

19. Statutes prescribing the time and manner of performing the duties imposed upon jury commissioners are directory, and a strict adherence to the requirements is not essential to the regularity and validity of the proceedings.

20. The statute fixing the time for making a jury list is directory, and if, for any reason, the duty is not discharged at the time designated, the officers may and should discharge it afterwards.

21. Where the District Court finds that the duty imposed upon certain officers, viz., the chairman of the Board of County Commissioners, the County Treasurer and County Clerk, to make out a jury list has not been discharged, either by a failure on their part to meet, or, having met, a failure to make the list as required by law, such court may call upon them to meet, and prepare and return the list required by statute.

22. The jury commissioners, while officers of the county, elected by the people, are also an aid and agency of the court for the transaction of much of its most important business, and as such are under its direction and control.

23. Whenever it appears that the proper officers have failed in their duty substantially to prepare and· return a jury list, it is in the power of the District Court to require them to perform their duty, and return a list such as the law requires.

24. If there should be no legal objection to the list other than that it is incomplete, it need not be set aside or quashed, but it should be completed to comply with the law.

25. In order to constitute a jury of the county, or from the body of the county, it is not necessary· that the jury, or the list from which it is drawn, should be selected from all parts of the county.

26. A person accused of crime has no constitutional right to any particular method of selecting a jury. He is entitled only to an impartial jury of the county, and, within those constitutional limitations, the Legislature may define the qualifications of jurors, make such regulations as it may deem wise to determine who are qualified, and provide for their selection and attendance.

27. It is not a constitutional objection to a statute that the jury commissioners are required to make a list of the names of all persons whom they "believe" to be competent, taken from the last assessment roll of the county.

28. The statute is not unconstitutional which provides for a jury box, to be known as "box No. 3," which contains the names only of those persons on the jury list residing within five miles of the city or town where the court is held, and which is drawn from only to complete a panel or in obtaining a jury for a particular cause, the same names with all others on the list being in box No. 1, from which the original panel is selected.

29. The statutory provisions for the making of a jury list from the last assessment roll of the county, and by placing on such list the names of all persons on such roll believed by the of-

ficers required to make the list to be qualified jurymen, is not in violation of Section 10 of the Bill of Rights securing to an accused the right to a "trial by an impartial jury of the county or district in which the offense is alleged to have been committed."

30. Neither is the statute in conflict with that section of the constitution (Sec. 10, Bill of Rights) which provides for completing a regular jury panel, or a panel for the trial of a particular cause by drawing names from a box containing only the names of persons residing within five miles of the town or city where the court is held; the original panel having been selected from a box containing the names of all qualified jurymen in the county as returned by the jury commissioners.

31. Under the method provided by the statute for securing juries, an open venire can never issue until not only the panel for the term, but also jury box No. 3 is entirely exhausted; and it would seem that for completing the panel for the term an open venire cannot issue under any circumstances.

[Decided September 12, 1902.]

On Reserved Questions from the District Court, Laramie County, Hon. RICHARD H. SCOTT, Judge.

These two cases were heard and determined together. On the first day of the May term, 1902, of the District Court of the County of Laramie an order was entered for the drawing of a petit jury, and the same was drawn from the box provided by law. On the same day the prosecuting attorney for the county filed a motion to quash the jury list and for the issuance of an open venire to secure a petit jury for the term. The motion was filed generally under the title "In the Matter of the Trial Jury for the May, 1902, Term." It was also filed in the case of The State v. Ehler Bolln and John Ulrich, a criminal case. The prosecuting attorney moved that the questions arising be reserved for the decision of the Supreme Court. Thereupon the questions were reserved as stated by Mr. Justice Corn, who delivered the opinion of the court, as follows:

"1. Is Chapter 109 of the Session Laws of 1901, purporting to amend and re-enact Sections 3346 and 3350 of the

Revised Statutes of Wyoming, relating to the drawing of jurors, and also amending Sections 3351, 3352 and 3353 of the Revised Statutes of Wyoming, a valid law? Or is it void, for the reason that the bill or act in question was not signed by the Speaker of the House in the presence of the House, or for the reason that the journal for the House of Representatives of the Legislative Assembly of 1901 does not show that said bill or act was signed by the Speaker of the House in the presence of the House?

"2.   Is it necessary that the County Assessor of the County of Laramie should ascertain and enter upon the assessment roll of each year the information required by Sections 3387 and 3390 of the Revised Statutes of Wyoming, relating to the qualifications of jurors? And is it necessary that the chairman of the Board of County Commissioners, the County Treasurer and the County Clerk should select the jury list only from the names of such persons so entered on the assessment roll?

"3.   Is it necessary, under the provisions of Sections 3345 and 3346, Revised Statutes of Wyoming, and of the amendment to Section 3346 by Chapter 109 of the Session Laws of 1901, that the officers therein named should make a list of all persons residing in the County of Laramie as the list of trial jurors for the ensuing year, who possess the qualifications for jurors otherwise prescribed by the statutes of this State? Or may such officers select any number of persons that they may choose to select, or may said officers select only such persons as they may believe to possess the qualifications of jurors, or is it incumbent upon said officers to select the names of all of the qualified jurors throughout the body of the county?

"4.   Does the list of names selected by the officers on January 13th, 1902, comply with the provisons of Section 3346, Revised Statutes of Wyoming, as the same is amended by Chapter 109, Session Laws of 1901?

"5.   Was it within the constitutional power of the Legislature of this State to enact Section 3346 of the Revised

Statutes of Wyoming, and can the Legislature of this State permit the officers named, or any officers, to select as jurors, or to select a list of jurors, otherwise than from the entire body of the county?

"6.    Can the Legislature leave it to the discretion of any set of officers or any person or persons to select a list of jurors at their own discretion, or is it incumbent upon the Legislature to require such list to be selected from the entire body of the county?

"7.    Are Sections 3357 and 3358, Revised Statutes of Wyoming, unconstitutional for the reason that there is designated a five-miles limit from which jurors are to be drawn, as specified in those sections, and has the Legislature of this State the power to prescribe any limit within which jurors are to be summoned when such limit is not co-extensive with a district ascertained by law?

"8.    Are Sections 3345, 3346, 3347, 3348 and 3349, and Sections 3350, 3351, 3352 and 3353, as amended by Chapter 109, Session Laws of 1901, and Sections 3354, 3355, 3356, 3359, 3360, 3362, 3363, 3364, 3365, 3366, 3367, 3368, 3369, 3370, 3371, 3372, 3373, 3374, 3375 and 3376, so connected with 3357 and 3358, Revised Statutes of Wyoming, as to form a part of the same system, and can they be complied with without also complying with the provisions of Sections 3357 and 3358, and are they, therefore, unconstitutional and void, or are any of said sections unconstitutional and void, and, if so, what ones? And what ones are good and valid?

"9.    In case any of said sections are unconstitutional and void, or in case all of said sections are unconstitutional and void, has this court the power to issue an open venire directed to the sheriff for the summoning of a petit jury for the trial of cases pending before this court?"

*J. A. Van Orsdel,* Attorney General, and *W. R. Stoll,* County and Prosecuting Attorney for Laramie County, for the State.

The method pointed out by the statute for the impaneling of a jury must be followed, but where this has been done and there is still no jury, or the jury is for any reason incomplete, the court has inherent power to issue an open venire for the impaneling of the jury. The same is likewise true where for any cause whatever there is either an incomplete jury or no jury at all. This power is one of the common law powers of the court, and there being in this State no provision of the law as to what is to be done when such a condition of affairs arises, and the issuing of an open venire not being prohibted, our courts are vested with inherent or common law power to summon a common law jury. (R. S., Sec. 3350; 1 Thomp. Tr., Secs. 23-26, 20; Thomp. & Mer. on Jur., Sec. 79 *et seq.;* 17 Ency. L., 1191-1195; Clawson v. U. S., 114 U. S., 477; U. S. v. Clawson, 4 Utah, 34; Carter v. Ter., 3 Wyo., 193; Mackey v. People, 2 Colo., 13; Beery v. U. S., id., 192; Wilson v. People, 3 id., 325; Straughn v. State, 16 Ark., 37; Wilburn v. State, 21 id., 198; Stone v. People, 2 Scam., 326; Borelli v. People, 164 Ill., 549; U. S. v. Hill, 1 Brock., 156; Eastham v. Holt, Judge, 43 W. Va., 599; Com. v. Cressinger, 193 Pa. St., 326; State v. Kellogg (La.), 29 So., 285; Simmons v. Cunningham (Idaho), 39 Pac., 1109.; Chumasero v. Potts, 2 Mont., 242; State v. Holmes, 63 N. C., 18; see also 12 Ency. Pl. & Pr., 393-410, 273-276.)

Under the provisions of Sections 9 and 10, Art. 1 of our Constitution, the jury there referred to. is a common law jury. (People v. Powell, 87 Cal., 348; Brown v. State, 62 N. J. L., 666; State v. Slover (Mo.), 36 S. W., 50; State v. McClear, 11 Nev., 39; Opinion of Justices, 41 N. H., 550; State v. Hart, 19 Utah, 438; First Nat'l Bank v. Foster, 9 Wyo., 159; Denver v. Hyatt (Colo.), 63 Pac., 403.)

At common law both the grand jury and the petit jury were summoned by the sheriff in the first instance, and no method of preparing the list before such summoning was done was ever in existence. Innovations on this method

have been made by statute. Where the common law pre-
vails, or where it has not been modified by statute in the
matter of the impaneling of the jury, or where its power has
not been taken away by statute, the old common law power
of the court to direct a jury to be summoned from the county
still exists, and especially does it exist in our State, where
the common law still prevails, except where it is abrogated
or modified by statute.

It is believed to be equally well established that the jury
must come from the body of the county; that is to say, that
jurors must come from the different parts of the county. It
would be error to summon a jury from a particular part of
the county. By this it is not meant that it would be error
to try a defendant unless the jury as ultimately constituted
was composed of jurors from all parts of the county, but
that in selecting the regular panel of jurors, and in select-
ing the panel for the trial of a particular case, every rea-
sonable endeavor shall be put forth to obtain a jury repre-
senting all parts of the county from which the jury as
ultimately to be determined must be selected. It would,
therefore, seem to follow that it is beyond the power of the
Legislature to require a jury to come from a particular part
of the county to the exclusion of all other parts of the
county. (17 Ency. Law (2nd Ed.), 1120-1121; Const. of
Wyo., Art. 1, Secs, 9, 10; Thompson & Merriam on Juries,
Secs. 67, 79; 1 Thompson on Trials, Secs. 13-19; 3 Black-
stone Com., 787-788; id., 791-2; 4 id., 1023; Olive v. State,
11 Neb., 1; Swart v. Kimball, 43 Mich., 443; Shaffer v.
State, 1 How. (Miss.), 238; Hewitt v. Cir. Judge, 71 Mich.,
287; People v. Hall (Mich.), 12 N. W., 665; Zanone v.
State, 97 Tenn., 101; Hartshorn v. Patton, 2 Dall., 252;
White v. Com., 6 Binn., 179; Peri v. People, 65 Ill., 17;
Miller v. People, 183 id., 423; People v. Enright (Cal.),
66 Pac., 726; Spito v. State (Tex.), 24 S. W., 97; Trimble
v. State (Dissenting Opin.), 2 Greene, 404; Gibbs v. State,
3 Heisk., 72; Wash. v. Com., 16 Gratt., 530; Gibbon v.

Van Alstyne, 9 N. Y. Sup., 156; Babcock v. People (Colo.), 22 Pac., 817.)

Counsel cited the following cases as holding or indicating a contrary doctrine and commented upon them: Colt v. Eves, 12 Conn., 242; Ellis v. State, 92 Tenn., 85; People v. Hall, 48 Mich., 482; People v. Coughlin, 67 id., 466; State v. Kemp (Minn.), 24 N. W., 349; Gardiner v. People, 6 Park. Cr., 155; Wash. v. Com., 16 Gratt., 530; Poindexter v. Com., 33 id., 766; Baccigalupo v. Com., id., 807; Craft v. Com., 24 id., 602; Lawrence v. Com., 81 Va., 484; Trimble v. State, 2 Greene, 404; State v. Kellogg (La.), 29 So., 285; People v. Reigel (Mich.), 78 N. W., 1017; State v. Kyne (Kan.), 62 Pac., 728; Page v. Millerton (Ia.), 86 N. W., 440; State v. Craft (Mo.), 65 S. W., 280; State v. Lee (S. C.), 14 S. E., 395; Hornsby v. State (Ala.), 10 So., 522; State v. Williams, 2 Hill (S. C.), 84; Spito v. State (Tex.), 24 S. W., 97; State v. Stephens, 11 S. C., 319; U. S. v. Stowell, 2 Curt., 153; U. S. v. Mays, 1 Ida., 763; U. S. v. Munford, 16 Fed., 164; U. S. v. Chaires, 40 id., 820; U. S. v. Richardson, 28 id., 61; Peters v. U. S. (Okl.), 37 Pac., 1081.

Under the language of Sec. 10, Art. 1, of our Constitution, the defendant is entitled to "a jury of the county or district" where the offense was committed. The term "district" may include more than one county or it may include a number of subdivisons of the county itself. Thus, a county may be cut up into townships, and a number of townships may be designated a district; or the county may otherwise be cut up into districts. Such districts, then, may have courts, and in such a case the language of the Constitution would require only a jury from within the jurisdiction of such court; that is, a jury drawn from the different parts of said district. It is plain that the jury should come from the same geographical territory over which the court has jurisdiction. It is submitted, therefore, that what this language of our Constitution means is that the jury must come from the district

within which the offense was committed, and this district must be co-extensive with the territory over which the jurisdiction of the court extends. (Olive v. State, 11 Neb., 1; State v. Kemp, 34 Minn., 61; Shaffel v. State, 97 Wis., 377; Weyrich v. People, 89 Ill., 90.)

Unless there is an imperative requirement of the statute to in any and all cases fill vacancies and complete panels from men selected from the body of the county, jurors may be selected to fill up a panel from the bystanders, but this applies only to the filling of the jury for a particular case.

It is true that in some cases the right of a court to summon bystanders or talesmen is referred to with reference to the completing of the general panel for the term, and, while it is also true that the terms "bystanders" and "talesmen" are sometimes referred to as implying jurors summoned to complete any panel, it is believed that unless the statute makes particular provision allowing a general panel to be filled in this manner the law has always been that "bystanders" or "talesmen" may be resorted to only for the purpose of filling the panel for the trial of a particular case, and never in the absence of statutory provision for the completing of the regular panel. (12 Ency. Pl. & Pr., 391-2; 2 Abb. Law Dict., 537; 2 Bouvier's Law Dict., 704; 17 Ency. Law (2nd Ed.), 1191; Shields v. Bank, 3 Hun, 477; Nesbit v. People (Colo.), 36 Pac., 221; Chitty C. L., 517-519.)

While our Constitution uses the term "by a jury of the county or district," this term is to be understood in the light of all legal learning upon the subject, and this learning teaches us that the meaning of this term is that the jury must come from all parts of the county or of the district, or at least that it is beyond the power of the Legislature to direct, either in all cases or in any particular case, that the jury shall come from a particular designated part of the county or district.

If it be true that a jury selected from any particular part of the county (not a district designated by law) is a jury

"of the county" or a jury "from the body of the county," then it follows that all those cases heretofore cited which hold that no court or officer has the power to summon a jury, or a part of a jury, from a particular part of the county, have decided the question erroneously, and there could have been, in truth, no constitutional objection to the jurors so summoned; and it would seem also to follow that if the Legislature may direct a jury to be drawn from a particular part of the county, any court or officer having power to summon a jury may also select it from a particular part of the county.

It further follows that if the Legislature may direct the jury to be drawn from a particular part of the county, it may make that part so designated have whatever limit it sees fit. If it can establish a "five-mile" limit, it can establish a "one-mile" limit, a "quarter-of-a-mile" limit, a "one-block" limit, or any other limit from which a jury of twelve men can be impaneled. If it has the power to do this, how does such power differ from the power to say that a jury shall consist of "Catholics" or "Presbyterians," or "saloon men," or "gamblers," or of any other class, so long as the condition is imposed of being impartial?

It also further follows that if the Legislature may designate a particular part of the county from which the jury must come, it may designate *any* particular part of the county, if the only requirement is that such part must be within the geographical limits of the county. It may, therefore, provide that the entire jury may come from the "five-mile" limit, or any other limit. It may provide that in every county of this State the jury must come only from the county seat.

The question here raised goes farther than the mere fact of a jury as returned not including jurors from all parts of the county. The law here assailed is assailed because of the power which is claimed to fix an arbitrarily limited portion of the county from which jurors *must* come in any case and in all cases.

It is believed that it is a substantial right of a defendant to have the jury selected in the manner pointed out in the statute. By this is not meant that all provisions of the statute are mandatory, and that immaterial formalities are necessarily to be complied with, but it is meant that if there is any material departure from the mode of selecting the list of jurors, such departure is fatal to the list and renders the same void.

Where the statute prescribes that the list shall contain a designated number, and the list contains a less number, a jury selected from such list will be set aside upon being challenged. It is considered that it is a substantial right of the defendant, where the statute specifies the list to contain a designated number, to have that number selected from which his jury may be drawn; and while a greater number might not vitiate the list provided the excess were stricken off, a less number would vitiate the list. (17 Ency. Law (2nd Ed.), 1111; Thompson & Merriam on Juries, Sec. 267 et seq.; Leathers v. State, 26 Miss., 73; Risner v. Com. (Ky.), 26 S. W., 388; Hunter v. State (Tex.), 31 S. W., 674; 12 Ency. Pl. & Pr., 276-280, 326-7, 420; 17 Ency. Law, 1110, 1111; 1 Thompson on Trials, Secs. 33-4; Thomp. & Mer. on Juries, Sec. 143; Hewitt v. Saginaw Circuit Judge (Mich.), 39 N. W., 56.) On the general subject of the effect of irregularities in the selection of the list, see the following cases, though not passing upon the particular question here involved: Clare v. State, 30 Md., 163; Moses v. State, 60 Ga., 138; State v. Foster, 32 La. Ann., 34; State v. Stephens, 11 S. C., 319; Brazier v. State, 44 Ala., 387; Brown v. Com., 73 Pa. St., 321; State v. Welch (W. Va., June 18, 1892), 15 S. E., 419; State v. Lee (S. C., Jan. 1, 1892), 14 S. E., 395; Johnson v. State (Ala., Feb. 6, 1894), 16 So., 99; Clark v. Com'rs Saline County (Neb.), 4 N. W., 246.

*H. Donzelmann,* for defendants Bolln and Ulrich.

A motion to quash the jury list is an innovation upon the

common law, under which it was known as a challenge to the array (2 Cooley's Blackstone, 1121), and not one thereunder. (People v. Madison County, 125 Ill., 334.) No challenge either to the array or to the poll can be taken until a full jury shall have appeared; therefore, where the challenges are taken previously, they are irregularly made and out of season. (Rex v. Edmonds, 4 B. &. A., 471; 1 Harrison's Digest, 842; 1 Chitty's Cr. Law, 543-544; Ry. Co. v. Wheelis, 72 Ill., 538; Lamb v. State, 36 Wis., 424.) The record discloses the fact that neither on the 26th day of May nor on the 27th day of May, at the time of the presentation and at the time of the hearing of this motion to quash the jury list herein, were the defendants present in court. The right of the defendant to be present in person is guaranteed to the defendant by Sec. 10 of Art. 1, of the Constitution. It has long been settled that in a trial for felony no order which may prejudice a prisoner can rightfully be made in his absence. (State v. Alman, 64 N. C., 367; Gladden v. State, 12 Fla., 577; Witt v. State, 5 Coldwell, 11; Hooker v. Commonwealth, 13 Grat., 763; Sneed v. State, 5 Pike (Ark.), 432; State v. Epps, 76 N. C., 55; Brown v. State, 24 Ark., 627; Maurer v. People, 43 N. Y., 1.)

The Legislature, having provided by law the manner in which challenges may be exercised, and having legislated upon the subject, has thereby changed the common law practice as far as the same applies to challenging jurors, and has abolished the challenging of an array or panel in as much as it provides that either party may challenge the jurors, but that the challenge must be to individual jurors. (Secs. 3639, 3640, Rev. Stat.)

Reserved questions to be answered by the Supreme Court will only be considered by the Supreme Court when the papers disclose the fact that the reserved questions are actually involved. (Rasmussen v. Baker, 7 Wyo., 120.)

And much less will a Supreme Court consider such re-

served questions, when the record and all the papers in the case disclose the fact that these questions only arise in a hypothetically stated case. (Stoll v. Board, 6 Wyo., 231; State v. Boughman, 38 O. St., 459; State ex rel. Perkins v. Board, 7 Wyo., 161.)

This same principle is upheld by the United States Supreme Court, when, under the United States statutes upon a difference of opinion arising between two judges in the Circuit Court, the questions upon the decision of which such differences of opinion arise, are reserved to the United States Supreme Court. (U. S. v. Rosenburgh, 7 Wallace, 580; U. S. v. Perrin, 131 U. S., 55; Little v. Bowers, 134 U. S., 547; Ry. Co. v. Day, 41 N. W., 19; Pierse v. West, 29 Ind., 266.)

The objection to a venire is, in legal effect, a challenge to the panel, and can only be for bias of the particular officer summoning the jury. (People v. Welch, 49 Cal., 177; People v. Wallace, 35 Pac. Rep., 862; Londoner v. People, 26 Pac. Rep., 135.) A challenge to the array of the regular panel will be overruled if the record fails to show that the defendant in some material way suffered injury. (Territory v. McFarland, 37 Pac. Rep., 1111; Ferris v. People, 35 N. Y., 125; State v. Gillick, 7 Ia., 288; State v. Straub, 47 Pac., 227; U. S. v. Chaires, 40 Fed., 820.) The courts have held that a list of jurors valid on its face is conclusive as to its regularity. (Gardiner v. People, 6 Park. Crim., 157.) A motion to quash the panel of jurors verified on belief by the prosecuting attorney is sufficient to justify the court in quashing the panel. (Weeping Water E. L. Co. v. Haldman (Neb.), 52 N. W., 892.)

Provisions of law for selection, distribution and drawing of jurors are directory, rather than mandatory and indispensable. (Huling v. State, 17 O. St., 589; Wilhelm v. People, 72 Ill., 468; Rafe v. State, 20 Ga., 64; Thomas v. People, 39 Mich., 309; People v. Tweed, 50 How. Pr., 280; Dolan v. People, 64 N. Y., 485; Foust v. Comm., 33 Pa.

St., 338; Ferris v. People, 35 N. Y., 125; State v. Frazier, 39 Pac., 819; Bish. on Crim. Pr., Sec. 932a and Note 2; Bish. on Stat. Cr., Sec. 255; State v. Straub, 47 Pac., 227; State v. Gillick, 7 Ia., 288.)

*J. W. Lacey* and *T. F. Burke, amici curiae.*

In this case there has been an attempt to reserve to this court for its decision a number of questions upon a motion to quash a jury list. The first question for consideration is, "What is the nature of a reserved question to this court, under Sections 4276 to 4278 of the Revised Statutes?" In considering the statute, it will be found that it points to individual questions, and not to an entire cause. We have had a few cases under this statute in which the practice has been somewhat discussed. It is held by this court that the question must be one which actually arose before the District Court, and not some hypothetical question, or a question which it was anticipated might arise in the future. (Stoll v. Board, 6 Wyo., 231; State ex rel. v. Board, 7 Wyo., 161.)

The important or difficult question reserved must necessarily be understood to be an important or difficult question of law, else the Supreme Court would by the statute be given original jurisdicton as to questions of fact, which would be unconstitutional. The matter has been frequently before the Supreme Court of the United States, and that court holds that the question certified must be one of law only. (Jewel v. Knight, 123 U. S., 426; Denniston v. Stewart, 59 U. S., 565; Webster v. Cooper, 18 How., 55.) There must first be a precise knowledge of the facts before the question of law can arise. (Ogilvie v. Ins. Co., 18 How., 577; Cal. Paving Co. v. Molitor, 113 U. S., 609; Waterville v. Van Slyke, 116 U. S., 699; Little v. Bowers, 134 U. S., 547.)

The question of law, such as contemplated by the statute, may arise in a proceeding, but in order that it shall arise the court must be brought face to face with the question of

law itself, with nothing intervening to be decided, and the law question must be clear, pointed and simple.

What is the situation in the case at bar? Prosecuting attorney has made his motion, first, to quash the jury list; second, to declare the list void, and all lists selected under and by virtue of the statute of the State of Wyoming; and, third, to issue an open venire for jurors. The grounds stated for the motion are seven in number.

The motion is not to quash the panel of jurors drawn by the court below; it asks no action upon that jury panel. It is not, therefore, a challenge to the array in any sense, and leaves entirely untouched the panel of jurors that has been drawn, the motion having been made after the panel was actually drawn. The court below, therefore, so far as anything here disclosed is concerned, has a panel of lawful jurors summoned to appear in that court, which, so far as anything here disclosed can show, is an ample list for the trial of all causes, and which is not challenged by any one. Whatever there may be of a jury list filed in the District Court is sought to be challenged by the prosecuting attorney by his motion. There is no statute authorizing the County Attorney or anyone else to proceed in relation to this jury list. If, as contended, the jury list is void, it needs no further attention; if it is valid, it cannot be attacked, and the State does not here show that it has any interest whatever in this jury list, since, so far as now appears, there is no further occasion for the use of this list, and no further occasion may ever arise, and, therefore, it is not shown that the State has any right whatever for or against this jury list.

If it should be conceded, for the purposes of the argument, that there is a proceeding here authorized by statute to quash the list, it would become necessary next to consider the grounds here set forth for tearing in pieces this particular list. The first ground is based upon an assumed and alleged invalidity of Chapter 109, Session Laws of 1901, but there is nothing whatever in the record to show

whether the jury list was drawn under the original act of 1899 or under the amendment of 1901.

The second ground of the motion is that the assessor did not ascertain the facts that he should have ascertained. If the jury list was drawn as required by law, it is impossible to see how the failure of the assessor to perform his duties would in any wise affect the validity of the list.

The motion is that he did not ascertain and enter "the information," an allegation which would be true if every material item was ascertained, but some immaterial matters were omitted. The third ground of the motion is that the officers who made the list made up a list containing one hundred and ninety-two names, but that these were not the names of all persons competent and qualified to serve as trial jurors. This ground does not state that there were other persons than those named who were competent and qualified jurors of Laramie County; it does not state that any name was omitted for bias or prejudice, or that any portion of the county was excluded in making up the list. So far as it shows, it might well be true that these officers named every person within the county of whom they had any knowledge, and so far as the motion goes they might have found full, or practically full, information of the qualified persons from the assessor's lists. If the statute is mandatory to the extent that would have to be claimed, in order to maintain the various propositions, then it would be impossible to draw a jury list under it, because it is probably impossible to secure the last name of the last qualified juror in any county in this State.

The fourth ground is like the first, necessarily abandoned, because the record does not show whether the officers proceeded in drawing the list in accordance with the statute of 1899, or with the statute as amended in 1901. The fifth ground is like the third, excepting that the statement is that they did not select every single name of persons whom they believed to be competent and qualified. It does not state

how the omission occurred, whether from some accident or inadvertence, and so far as the ground goes, it would be true if a single name were accidentally omitted from the most innocent cause. The sixth ground has nothing whatever to do with the making of the list which it is sought to quash. This ground alleges that another section of the statute, 3357, is unconstitutional, because it requires the court to summon from within a five-mile limit under certain circumstances. How the court could be called upon to quash a jury list made out in January, 1902, on any ground of the unconstitutionality of Section 3357 is more than we can understand. Section 3357 is not by the record shown to have entered into the selection of the list in the remotest degree. The seventh ground of the motion is based upon the same matters as the sixth ground, and would fall in like manner.

It results that the court was not in any way called upon to act by anything in the first and fourth grounds, because the amendments of 1901 are not shown to be involved; that the court was not called upon to act under anything in the sixth and seventh grounds, because it is not shown that they in any wise affected the lists sought to be quashed; that the court was not called upon to act upon the second ground, because the character of the omission of the assessor is not stated, nor is it shown that the deputy assessor did not fully remedy every possible omission; that the court was not called upon to act upon the third and fifth grounds, because there is no showing that any considerable number of jurors were left off the lists, no showing of bias, no showing that the rights of the State would be in any wise prejudiced.

If we overlook the fact that this is a motion not to quash the array or panel, and that the motion itself raises no issue, and that the affidavit in its support says nothing which calls upon the court to decide anything, still it is not shown here that any issue of fact was decided by the court, it is not shown what the facts are by any decision of the court,

and until this question of fact has been decided no question of law can arise upon it. The case comes here solely upon the motion and affidavit, and if this court is required to decide any law question involved it must do it upon an ascertainment of its own of all the facts which raised the question of law, since the court below decided nothing.

The law providing for the selection of juries by commissioners was passed for the purpose of preventing and avoiding the well-known evils resutling from the summoning of juries by sheriffs. (Smith v. Bates (Tex.), 27 S. W., 1044-1045; Daniels v. Bridges et al. (Tex.), 11 S. W., 121; Ry. Co. v. Greenlee, 8 S. W., 129; Williams v. State, 24 Tex. App., 34; O'Brien v. State, 12 Tex. App., 118-120.)

There being no statute empowering the court or other tribunal to revise and control the selection of jurors by the commissioners, such power cannot be exercised except in a clear case of fraud or corruption in the action of the commissioners, or some great wrong, such as would shock the sense of justice and defeat the ends of the law. A challenge to the array can only be made by stating under oath that the officer summoning the jury has acted corruptly. (Arnold v. State, 38 Tex. Crim., 3.) The statute governing the selection of jurors is directory, merely. (Smith v. Clayton, 29 N. J. L., 357.)

From the principles above stated, it results that, even if the challenge here were properly to the array, still it would avail nothing, because it shows no fraud, corruption or gross violation of duty on the part of the board which selected the jurors. The doctrine that such statutes are directory, merely, is sustained by the overwhelming weight of authority. That being true with statutes generally, how much more is it true as to our statute, which has many expressions showing the directory character of the provisions.

It is not prejudicial to the interests of the commonwealth to provide that the jury box shall be filled with men above the average in intelligence and character. One of the evils

of the old jury system was that, for political purposes and influence, men were often selected for jury duty upon open venires who were utterly without character. To remedy this evil the statute, and we think wisely, left to the commissioners the discretion which the old common law reposed in the sheriff, discretion which did not in the sheriff's case require him to select every man in the county, or every man whom he might meet, as a juror, but which permitted him to provide for the court good and lawful men fit for jury duty. It is provided that in future, instead of this discretion being invested in a single individual, who could exercise influence directly or by direct contact with the proposed jurors, the discretion shall be lodged in three officers, who can gain nothing personally by favoritism, and who would operate as a check upon one another, and thus more certainly select good jurors. If it were intended by the law that every citizen who had a statutory qualification should be always placed upon this jury list, then it would not be necessary for any board of three persons to perform this service, and there would certainly be no discretion left in the board. The whole service would be a mere ministerial copying of names. But counsel for the State seem to contend that if the jury commissioners are given power to select names, such power is an invasion of the principle that the jury must be brought from the body of the county. Does counsel mean that when a sheriff happens to obtain his entire jury from one end of the county, the jury is not brought from the body of the county, and does he contend that the entire qualified population must be on the jury in order to constitute a jury from the body of the county? These questions answer themselves.

If it should be granted, for the sake of the argument, that the motion and affidavit are in form sufficient to challenge the array, still, as clearly shown in the brief for the defendants in this cause, the challenge is here premature, and for that reason raises no question. It would scarcely need

argument or authority to say that the array cannot be challenged until it is arrayed.

Our statute provides for no challenge to the array. It may be, indeed, that a correct construction of our statute will show that it repeals every sort of challenge except those directly provided for. The language of the statute is sufficient to cover such a purpose. But at the very least it creates no new ground of challenge to the array. Now, at common law, as clearly shown by counsel in the brief for the defendants, no challenge to the array could be interposed except for prejudice and bias of the officer summoning the jury, and the bias must have been such as indicate injury to the person making the challenge. In this State, if there be still a challenge to the array, it cannot be on grounds narrower than those required by the common law.

If it be conceded that the challenge here is to the array, still the court has not yet reached the question of the five-mile limit box, and could not reach that question until the jury panel is exhausted.

This brief is submitted not on behalf of any particular person or persons, but because of general interest in the question as a member of the community, and because of a more particular interest as a practitioner before the court.

*J. A. Van Orsdel*, Attorney General, and *W. R. Stoll*, Prosecuting Attorney, for the State, in reply.

The State contends for two things: (1) That difficult and important questions arose in a proceeding and in a case before the District Court, and, having arisen, it was the duty of the District Court to dispose of them in some manner; and (2) that the questions were not hypothetical; that they were not questions to be raised in the future, but were already raised and had already been reached in the proceeding or in the case then before the court.

The record discloses that on the first day of the May term of court the court determined that, as there were five or six

criminal cases to be disposed of at that time, a jury was neces-
sary for the disposal of such cases. That was a fact which
confronted the court. A jury for the purposes of the term
must be obtained, and presumably the court would have to
obtain it in the manner pointed out in the statute. There
were then two things before the court—first, the proceeding
of drawing and summoning the jury in the manner pointed
out by the statute, and, second, criminal cases to be tried by
the jury so selected. These cases were there on the docket.
Informations were filed. The defendants were present and
had entered their pleas, and had given their recognizances
for appearance. There were then both a proceeding pending
in the District Court and also cases pending in that court.
This being the situation, the prosecuting attorney filed in
that proceeding and in those cases motions, the same mo-
tion in each; and in those motions raised the questions
which have been reserved to this court. Those motions
raised questions as to the unconstitutionality of the statute
under which the jury was to be drawn. The District Court
had to dispose of these motions in some way. It could have
denied the motions, and the prosecuting attorney could have
taken exceptions; it could have sustained the motions, and
the defendant could have excepted; it could have stricken
the motions from the files, and the prosecuting attorney
could have excepted; but the court did not see fit to do any
of these three things. On the contrary, it reserved the ques-
tions presented by the motions to the Supreme Court.

Whether questions will be reserved or not by the District
Court is a matter for the District Court to determine. The
statute gives the District Court full and complete authority
to reserve questions which are important and difficult, if
such court desires to do so. This, it is submitted, answers
the entire argument made by the other side against the re-
serving of these questions.

Whenever the trial court is of the opinion that an import-
ant and difficult question arises in any action whatever, or

in any proceeding whatever, which is pending before such court, the question may be reserved. The action may be of any nature whatever, or the proceeding may be of any nature whatever; so long as such action or proceeding is pending in the court, questions which are important and difficult arising therein may be reserved. It cannot matter, under this language of the statute, when or how such questions arise, so long as they fairly arise in an action or proceeding; and the proceeding itself may be a proceeding in some pending case, or it may be a proceeding in the court not in the usual form of an action, but may be, nevertheless, properly designated a proceeding. That this statute and similar statutes are constitutional has been too often decided to be again questioned; and that the necessity for the question itself being stated with sufficient clearness to show what the question or point is, is likewise established by numerous decisions. That the questions reserved may be questions arising in the court, or in any proceeding which in itself is a part of a case, we believe to be equally clear upon principle, and, so far as authorities go, to be sustained by authority; and the authorities apply to statutes of this kind, a liberal construction rather than a narrow one. The following cases are referred to as sustaining the proposition that a liberal construction is adopted by the courts in statutes of this kind: Sarver v. Ry. Co., 104 Ia., 59; Bank v. Bliss, 67 Conn., 317; Waco, &c., Co. v. Waco, 86 Tex., 661; Corey v. Corey, 3 Wyo., 209; Ter. v. Grant, id., 241; Board v. Rollins, id., 470; State v. Sureties of Krohne, 4 id., 347; State v. Crocker, 5 id., 385; R. R. Co. v. Baker, 6 id., 369. The following cases show a variety of conditions under which cases have been reserved: Sanger v. Truesdale, 8 Mich., 543; Jones v. Smith, 14 Mich., 335; Bragg v. City of Detroit, 5 Mich., 66; White v. Turk, 12 Pet., 238; U. S. v. Wiltberger, 5 Wheat., 76; U. S. v. Gurney, 4 Cranch., 333; Sergeant v. Biddel, 4 Wheat., 508; U. S. v. Daniel, 6 Wheat., 542; Wilkins v. Hollingsworth, 6 Wheat., 240; Miller v. Stewart, 9

Wheat., 680; Schimmelpenuch v. Bayard, 1 Pet., 264; Bank v. Owens, 2 Pet., 527; U. S. v. Randenbush, 8 Pet., 288; U. S. v. Chicago, 7 How., 185; Ex Parte Millegan, 4 Wall., 2; Ogle v. Lee, 2 Cranch, 33; Adams v. Jones, 12 Pet., 207; Dow v. Johnson, 100 U. S., 158; Chase v. Washburn, 2 Ohio St., 99; State v. Fellows, 50 Wis., 65; State v. Goodrich, 84 Wis., 359; Nichols v. City, 27 Conn., 459.

The jury list was already before the court. It had been selected in compliance with the provisions of Secs. 3345-3346, Revised Statutes of Wyoming, on January 13, 1902. It was in jury box No. 1. That was fact before the court. The duplicate of that list, so far as the same covered the jury residing within Cheyenne and its five-mile limit, must be presumed to have been also in jury box No. 3, for the statute specifies what the duty of the clerk is when he receives the list. This list being already in jury box No. 1, and the court having ordered a jury to be drawn from jury box No. 1, and Section 3346, under and by virtue of the terms of which such jury list was made, and the list in such jury box being challenged as unconstitutional, is it not a waste of time to consider an objection which says that that question, namely, the one questioning the constitutionalityof Section 3346, had not at that time arisen in a proceeding and also in a case then pending before the court?

It was not at all necessary that the prosecuting attorney should have made any motion, either in a proceeding or in a case. The court being confronted with the cases to be disposed of, and with a law for the impaneling of a jury for the disposal of such cases, of its own motion could have reserved the questions. The questions certainly would be considered as arising to the mind of the court, and the court considering them difficult and important could have reserved them without the action of the prosecuting attorney or anyone else. Is there any question but that the defendants, or any one of the defendants in the cases pending in the District Court, could have made a motion to quash the list?

The motion to quash the jury list, and this in this case embraces the particular panel of twenty-four, is the method resorted to now, and has been the method for many years last passed to reach defects in the jury of this nature. The old common law doctrine relating to challenging the array is abolished in this State and has been abolished in many states, and the universal doctrine now is that the same results are obtained by a motion to quash the panel or the list as was obtained by a challenge to the array under the common law.

And this motion to quash may be presented at any time when a case is to be tried, and it is not necessary that a jury should be impaneled or called to the box before it is presented.

But it is argued that until the list of twenty-four is called and it is shown that some have not responded, or some are excused, it cannot be assumed that jury box No. 3 will be resorted to, and, therefore, to raise any question as to the unconstitutionality of the law prescribing jury box No. 3, is premature. We submit, in the first place, it is not premature because cases are before the court to be tried, and to be tried by a jury selected under the law relating to the selection of jurors.

We submit it to be a fundamental proposition that a prosecuting attorney has a duty to perform towards the defendant, as well as towards the State, and not merely towards one defendant, but towards all defendants.

While this duty does not go so far as to make him the attorney for one of the defendants or all defendants in criminal cases to the extent of doing everything in his power legitimately to try and prove the defendants innocent, it does go so far as to require him, under his oath, to see to it that no defendant is subjected to a trial before an incompetent jury, or to any other illegal or unwarranted procedure.

While it is to the interest of the people of the State, whose interests the prosecuting officer represents, to see to it that

crime is punished and laws vindicated, it is equally to the interests of the people of the State, and the people of this State do not desire it otherwise, that every man brought to the bar of public justice should be subjected to a trial only in the manner provided by law. That officer is derelict in his duty who assumes to insist upon the trial of any defendant before a jury which is not the jury required by the constitution of this State. (1 Bish. Crim. Proc., Secs. 293, 294; People v. Dietz, 86 Mich., 430; Ross v. State, 8 Wyo., 368; Ritchey v. People, 23 Colo., 314; Whart. Crim. Pl. & Pr., 556.)

There has at no time been any provision in this State for challenging the array. The challenge to the array is an exception to the whole panel—that is, the whole list. This exception need not be in the form of a challenge, but may be a motion to quash the panel or list. While it is a general rule that the causes for challenge must be those specified in the statute, yet immemorially juries have been challenged for other causes; and whenever causes arise which would deprive parties litigant of their constitutional rights courts may, under their general powers, quash the panel or list, although the statute may not specify such causes as ground for challenge. Here the grounds of challenge were the unconstitutionality of the law, and it does not appear that the right to make such a challenge has ever depended in any reported case upon the statute or common law. (S. L. 1869, 287, 288; R. S., Secs. 5341, 5385, 3640, 3595-3600; 1 Bish. Cr. Pro., Sec. 931; 17 Ency. L., 1111, 1112; 12 Ency. Pl. & Pr., 418-422.) Challenges lie no more with the defense than with the prosecution. It is not the law that the challenge must not be interposed until just before the jury is sworn. Although the challenging party cannot interpose the challenge after the jury has been sworn, it is not meant that he must wait until immediately prior to their being sworn. (R. S., Sec. 5342; 1 Bish. Cr. Pro., Sec. 933; 17 Ency. L., 1113-1114; 12 Ency. Pl. & Pr., 424-427; Thomp.

& Mer. Jur., 103-132; 1 Thomp. Tr., Sec. 31; State v. Davis, 41 Ia., 311; Whart. Cr. Pl. & Pr., Sec. 608; Peters v. State, 14 So., 896; Davis v. State, 31 Neb., 247; McKinney v. State, 3 Wyo., 720; Borrelli v. State, 164 Ill., 549; State v. Ashworth, 41 La. Ann., 683; State v. Tisdale, 41 id., 338; State v. Powers, 136 Mo., 194; Wilkins v. State, 112 Ala., 55.)

The State desires nothing except that jury trials shall be proceeded with according to law. It desires to know what the law is and to try all defendants according to its requirements.

CORN, JUSTICE. (After stating the reserved questions.)

At the May term of the District Court of Laramie County the court ordered that a jury be drawn for the trial of causes, and twenty-four jurymen were accordingly drawn in the manner prescribed by law to constitute the panel for the term. On the same day the prosecuting attorney for the county presented to the court a motion, supported by his own affidavit, to quash and set aside the jury list for the year and to declare void said list and all lists selected under the statutes of the State relating to the matter of selecting jury lists, and the drawing and impaneling of juries, and to issue an open venire for jurors for the term. And, upon the further motion of the prosecuting attorney, the District Court certified the foregoing, as important and difficult questions, to this court for its decision.

By the statutes it is made the duty of the assessor to ascertain from each male person assessed his age, residence, occupation, his ability to read and write the English language, his ctizenship and other matters touching his qualifications as a juryman, and enter the same opposite his name upon the assessment roll. It is made the duty of the chairman of the Board of County Commissioners, the County Treasurer and the County Clerk to meet on the second Monday in January, or as soon thereafter as practicable, and select and make a list from the last assessment roll of the names of all persons

whom they believe to be competent and qualified to serve as trial jurors. This list is to be signed by those officers and delivered to the Clerk of the District Court and filed by him in his office. The clerk is then required to write each name contained in the list upon a suitable ballot and deposit the ballots in a box prepared for the purpose. This, by our jury law, is denominated "jury box number one." From this box the regular panel of jurors for any term is drawn. Four other boxes are also provided for by the statute. Box number two contains the names of those who have attended and served as jurymen, and they are deposited therein after the adjournment of the term or session at which they served. In box number three are required to be deposited duplicate ballots, bearing the names of all persons on the jury list who reside within five miles of the city or town where the term is held. From this box, if at any time after the original panel has appeared in court it shall appear that enough trial jurors are not in attendance, are to be drawn the necessary names to complete the panel. Box number four contains the names of the twenty-four jurymen who constitute the panel for the term, and box number five the names of the jurymen sworn in a particular cause.

It is contended by counsel who are resisting the motions that the questions certified are not properly before this court for its decison, for the reason, substantially, that they have not actually arisen in any action or proceeding pending in the District Court within the meaning of the statute providing for the reservation of questions for decision by the Supreme Court. And, bearing in mind that the jurisdiction of this court is appellate only as to all the matters involved, we think it will clearly appear that, as to some of the questions, this court is without jurisdiction. But Section 3350 of the Revised Statutes provides that, whenever the business of the District Court requires the attendance of a jury for the trial of cases and none is in attendance, the court may make an order directing a trial jury to be drawn and summoned. This

emergency had arisen, and it became the duty of the court to direct the drawing of a jury from box number one, and, in making that order, it became necessary for the court to inquire and determine whether the box contained a legal list of jurymen from which the drawing could be made. And while the motion of the prosecuting attorney appears by the record to have been presented after the drawing was completed, yet it was on the same day and, we think, must reasonably be deemed a part of the same proceeding.

In Michigan a trial court, upon its own motion, had entered an order vacating the jury lists in consequence of the failure of the returning officers to comply with the law prescribing their duty in the premises. It was held that such action was not an improper exercise of the powers of the court, and it was said: "When it appears that, if a jury be drawn, it cannot stand if challenged, it would seem to be a proper thing for the judge to take steps to procure a lawful jury, and that litigants have not a right to insist upon drawing from jury lists, known to be invalid, merely because some party to an action has not raised the question." (Smaltz v. Boyce, 109 Mich., 382.) And in Louisiana it was said in substance that, if there was an irregularity in the matter of the selection of jurors, upon which directly or remotely were to be based all the findings of the grand juries and all the trials before the petit juries, it was the right and duty of the court to correct it, and it was for the court to determine whether an irregularity existed, and, if so, whether it was serious or trifling, and what remedy should be applied. (State v. Kellogg, 104 La., 580.)

A jury being required, and the motion of the prosecuting officer, attacking the validity of the lists and the constitutionality of the law providing for the selection of jurors, having been presented, we think that not only was there a proceeding in the court, within the meaning of our statute concerning the reservation of questions, especially as the same motion was filed in a pending criminal case, but that certain questions

arose in the proceedings for the present determination of the court. We do not well see how the motions could be ignored. A mere suggestion probably would have been sufficient to authorize the court to consider and determine whether the law under which the lists were returned was valid, and whether the proceedings in the matter of the selection of jurors were such as to enable the court by a compliance with the law to secure a legal jury for the term.

·Whether Section 109, Laws 1901, ever became a valid law, the point presented in the first question, is waived by counsel, being eliminated from the discussion by the fact that it makes no change in the act of 1899 with reference to the drawing of a jury in term time, but merely adds a provision for making the necessary orders and drawing and summoning the jury prior to the meeting of court. The proceeding in this instance was in term, and was fully provided for by the act of 1899, to which it is conceded the objection does not apply. And so with the amendment to Section 3346. It is explanatory simply and makes no change in the proceeding provided for in the original act.

In support of the propositon that the jury box number one did not contain a legal list from which a jury could be drawn, it is alleged in the affidavit accompanying the motion that the assessor did not obtain from persons assessed the information required by statute touching their qualifications for jury service, and that the assessment roll did not have such information set down opposite their names; that, moreover, the officers, whose duty it was to make up the jury list, did not select all persons whom they believed to be qualified, but, upon the contrary, there are in the county about eight hundred persons qualified for jury duty, while only one hundred and ninety-two names were placed on the jury list, and almost all of those from the City of Cheyenne, and within a limit of five miles from it, although nearly one-half of the persons qualified for jury service resided in portions of the county outside of such five-mile limit.

It was plainly the duty of the assessor to obtain and enter upon the assessment roll the information required by the statute, and for a failure of duty in that respect he was liable to such punishment as may be prescribed by law. But by the great weight of authority and, we think, for the better reasons, such statutes are held to be directory only, and a strict compliance with all their requirements is not essential to the securing of a legal jury list. A construction of them which would permit the incompetency or negligence of a single officer to defeat the object of the law and relegate the courts to a method of procuring juries, which has been found by long experience to be subject to many objections and great abuse, might in many cases work serious injury to the public interests. And the same rule of construction applies also to statutes prescribing the duties of jury commissioners or officers who, ex-officio, act in that capacity. (State v. Beckey, 79 Ia., 370; State v. Carney, 20 Ia., 82; Burlingame v. Same, 18 Wis., 299; State v. Straub, 16 Wash., 111; 12 Ency. Pl. & Pr., 277.)

But, at the same time, under the legislation upon the subject in this State, it is a necessary qualification of a juryman that he must have been assessed upon the last assessment roll of the county, and no authority is conferred upon the jury commissioners to make a jury list except from the assessment roll. It is also necessarily implied in the statute that the jury list shall consist of the names on the assessment roll of all persons whom the commissioners believe to be competent and qualified to serve. And we think a substantial compliance with these requirements is necessary; that is to say, an assessment roll must have been made from which to select, the selection must be made from the names on such roll and must consist of substantially all whom they believe to be qualified. We do not hold, and there is no reason for holding, that the mere absence of a name or names from the list which should properly be upon it, or the presence of a name or names not upon the assessment roll,

without proof that such errors occurred corruptly, would vitiate the list. But no authority is conferred by law upon the officers, whom, for the sake of convenience, we designate as jury commissioners, to arbitrarily select one hundred or two hundred, or any other designated number of names, and return the same as a jury list under the statute. The presumption is that the officers performed their duty; but if it should be brought to the knowledge of the trial court by adequate proof that they have purposely, either from a mistaken idea of their powers and duties, or otherwise, prepared a list substantially different from that required by law, in the respect that it is a mere selection from the names which should legally constitute the list, and that there has been intentionally omitted from it the great mass of the names of those whom they know, or believe to be qualified, such a list would not be a legal jury list. It would be the duty of the trial court to so find, and to refuse to order that a panel for the term be drawn from it. From the very nature of the duties imposed upon the jury commissioners, it is impossible to frame an accurate definition, applicable in all cases, of what would constitute a substantial compliance with the statute. By the terms of the act, they are required to place upon the list only those whom they believe to possess the qualifications of jurymen. This language commits that question to their judgment and decision, and it is no ground for an attack upon a list so made up that others might disagree with them in regard to the qualification of persons whose names appear in the list or of others whose names have been omitted. But it is beyond controversy that an intentional disregard of the statute, by reason of an erroneous interpretation of its provisions, or otherwise, cannot be deemed a substantial compliance with it.

As we have more than once decided, in proceedings of this character, this court has no jurisdiction to weigh evidence or pass upon issues of fact, but only to decide questions of law. In this case there is before us no finding of fact by

the court below, but only an *ex parte* affidavit of a prosecuting attorney alleging the existence of certain conditions. While the high character of the counsel making the affidavit is persuasive of the accuracy of his informaton upon the subject, it is yet merely persuasive, and the District Court, upon a hearing, may find otherwise. In Kelley v. Rhoads, 7 Wyo., 262, though there was an agreed statement of facts, we held that it was not competent for this court to decide the case, but only to state its decision of the propositions of law involved, and remit the trial and decision of the cause to the District Court. The .question, therefore, whether the list in question is a legal and valid jury list is not properly before us and is not decided.

But if the District Court shall find, upon an investigation of the matter, that the list is not in substantial compliance with the statute, in the sense indicated in this opinion, it will be its duty to quash the panel of jurors drawn from it and provide for a legal jury, if a jury is required, for the trial of cases at the term.

We have not adverted to the argument upon the technical questions, whether the motion in this case is a proper challenge to the array, and whether such a challenge is permissible under our statute, for the reason that, in our opinion, when it became necessary for the District Court to draw a panel of jurors for the business of the term, the question then arose whether there was a legal jury list from which it could be drawn, and the motion and affidavit of the prosecuting attorney were sufficient to put the court upon inquiry and call for its determination of the question whether there was such a substantial departure from the requirements of the statute in making up the list as would render it illegal. It was incumbent upon the court to act and to provide itself with the necessary agencies for the dispatch of the business coming before it. Whether it acted upon its own motion or moved by the request or suggestion of some officer or party, interested in the business of the term, we have not deemed very material.

As before stated, if the District Court should determine that this was not a legal jury list and quash the panel, it would then be its duty to provide itself with a jury for the term according to law. And the question presents itself what method is to be adopted in selecting a panel. The motion of the prosecuting attorney concludes with a request that the District Court issue an open venire for ·jurors for the term, and the ninth question reserved presents the inquiry whether, under certain conditions, the District Court has the power to issue an open venire. We think the specific question reserved has not arisen in the pending proceeding, and is not before us for decision. But upon others of the questions reserved a construction of the statute becomes necessary, and, in further consideration of the fact that the proper transaction of the business of the various District Courts of the State is dependent, in a measure, upon the adoption of a legal and proper procedure in procuring a panel where no jury list has been returned, as required by law, we are perhaps called upon to state the view of this court upon the subject.

By the great weight of authority the statutes, prescribing the time and manner of performing the duties imposed upon jury commissioners, are held to be directory, and a strict adherence to the statutory requirements is not essential to support the regularity and validity of the proceedings. And the language itself of our statute clearly indicates that the clause fixing the time for making the list is directory. Section 3345 provides that the commissioners shall meet on the second Monday of January of each year for the purpose of making the list; and if they fail to meet on that day they must meet as soon thereafter as practicable. We think it is clearly the legislative intent that if, for any reason, the duty is not discharged at the time designated, they may, and ought to, discharge it afterwards. And we are very clearly of the opinion that where the District Court finds that the duty has not been discharged, either by a failure on the part of

the commissioners to meet, or, if having met, they have failed to make the list as required by law, such court may call upon them to meet and prepare and return the list required by statute.

We are aware that the Alabama court has otherwise construed a statute very similar in its terms. (Wells v. The State, 94 Ala., 3.) That court reasons that there was no failure to meet at the time appointed by statute; that they did meet and did act, but that their action did not conform to the law; that there is no provision authorizing a re-assembling of the board, and that their action at any subsequent meeting would be entirely without authority of law. But we think the essential requirement of the statute is not the meeting of the commissioners, but the performance of the duty imposed upon them. Meeting at the time designated, and doing something else than what the law requires, neither discharged their duty nor exhausted their authority under the statute.

In New York the statute provided that the officers "must meet on the first Monday of July　*　*　* for the purpose of making a list of persons to serve as trial jurors.　*　*　* If they fail to meet on the day specified in this section they must meet as soon thereafter as practicable." The court say: "It is true these officers made an attempt to discharge their duty at the time designated by the code, but they failed to do so; they did not follow the provisions of the statute. As soon as they discovered that they had failed in this regard they again proceeded to discharge their duty under the statute, and we think that they succeeded in doing this by the lists that they made and filed on the 11th of December, and that the jurors composing such lists were properly selected, and that they became the jurors of the county at large, from which panels of trial jurors are properly drawn." (People v. Wennerholm, 166 N. Y., 577.)

In Florida the statute provided "that the Board of County Commissioners, at a meeting to be held the first week in

January of each year, or as soon thereafter as practicable, shall select from the list of registered voters in their respective counties and make out a list of three hundred persons properly qualified to serve as jurors." It appeared that the list was not made out until the 6th day of July. The court say it was the duty of the County Commissioners to act in such matters at the January meeting, but should they fail to do so, it would be competent for them to make the selection at a subsequent meeting. (Reeves v. State, 29 Fla., 535.)

And, by the general trend of authority, such statutes are not mandatory as to the time when the duty shall be performed. In a Michigan case it was objected that the time of making the lists from which the jurors were drawn varied from the statutory time in almost every instance. Judge Cooley, in delivering the opinion of the court, said: "There is nothing in this reason. The time for returning the lists was of no importance to parties litigant. The statute named a time when it would be convenient to make it, because the supervisor and clerk would then be together on business; but a list made earlier or later would be equally good, for nothing depended upon the time." (Thomas v. The People, 39 Mich., 310.) And the adjudged cases are generally to this effect. (12 A. & E. Ency. Pl. & Pr., 277.)

Questions 5, 6, 7 and 8 present the inquiry whether the provision authorizing the officers, named as jury commissioners, to select a list of jurors is in violation of Section 10 of the Bill of Rights, securing to the accused in criminal prosecutions the right to a "trial by an impartial jury of the county or district in which the offense is alleged to have been committed;" and, also, whether the provisions for completing the jury panel by drawing from box number three, which contains only the names on the jury list of those who reside within five miles of the city or town where the court is held, is in violation of the same section. It is urged that this court has no jurisdiction to consider and decide the lat-

ter question, because, in these proceedings, it has not yet become necessary, and may not become necessary at all, to have recourse to box number three, and that, therefore, it has not arisen within the meaning of the statute. But the question is also asked whether this provision is so involved as a part of the plan of procuring juries under the statute that, if it should be declared unconstitutional, other sections would become inoperative, and the entire method, devised by the Legislature for the purpose, defeated. And we are of the opinion that at least such confusion would result in the procedure that a consideration by us of the constitutional question cannot well be avoided.

It is contended, as we understand, that the constitution guarantees to a person accused of crime a common law jury, and that a common law jury must be selected from jurors coming from all parts of the county; that, therefore, our statute authorizng certain officers to make a jury list containing only the names of persons in the county whom they *believe* to be competent and qualified is unconstitutional and void; and that the sections providing for jury box number three, which shall contain only the names of those selected who reside within the five-mile limit, and for completing or filling the panel by drawing from that box, are unconstitutional and void for similar reasons.

We think it is well settled that, in order to constitute a jury of the county, or from the body of the county, it is not necessary that the jury, or the list from which it is drawn, should be selected from all parts of the county. Originally in England the King's courts sat at times and places suited to his convenience and pleasure. The burden to litigants of being compelled to follow the King's progresses throughout the country had become so great that, under the provisions of *Magna Charta*, the seat of court of common pleas was fixed at Westminster, and assizes were required to be held in the different counties. The jury was originally required to come from the vicinage where the crime was charged to have

been committed, but the inconveniences arising by reason of the bias or prejudice of jurymen acquainted with the persons concerned and familiar with the facts of the transaction, became so great that jurors from any part of the county were deemed to be of the vicinage and competent in that respect. And, from all the information we can obtain from the decisions, the right to a trial by a jury of the county, or from the body of the county, was not that the accused was entitled to choose a jury from all the inhabitants, or all the quailfied jurymen of the county, but the purpose was that he should not be subjected to the evils of being taken to a distant place for trial, or of being compelled to submit to a trial before a jury composed of residents of another county. (Thompson & Merriam on Juries, Sec. 66; U. S. v. Ayres, 46 Fed., 649.)

As said in a Minnesota case: "The words *de corpore comitatus*, from the body of the county, of the county, of the vicinage, as they appear in English statutes and in American constitutions and laws, mean no more, as applied to jurors, than that they must come from some part of the given county. Sir Matthew Hale says that jurors are "to be *de viceneto,* but this is not necessarily required, for they of one side of the county are by law *de viceneto* to try an offense of the other side of the county." (State v. Kemp, 34 Minn., 63.)

And we think that the courts generally take substantially the same view of the subject. In New York, there was an act providing for a special jury in counties having a certain population, for the method of selecting such special juries and also creating a special jury commissioner and prescribing his dutes. The claim of counsel was that the act was unconstitutional in not providing that the jury should be drawn from the body of the county. The court say the constitution does not require the placing upon the lists of every qualified juror in the county; that the body of the county is but a generic term applied to the representation of the citizens of the vicinage embodied in the lists of qualified jurors,

selected by officers appointed by law. (People v. Dunn, 31 App. Div., 140.) The case was afterwards heard in the court of appeals, and the objection that the act delegated judicial powers to the special jury commissioner to determine the qualifications of jurors more fully considered. They say that the constitution does not secure to the defendant any particular mode of jury trial, nor any particular method of jury selection; that the constitutonal provision carried no limitation of or restriction upon the legislative power, except as to the right guaranteed, viz., a jury trial in all cases in whch it had been used before the adoption of the constitution. (157 N. Y., 532.) In Louisiana a statute exempted the inhabitants of the parish, residing on the west side of a certain river and bayou, from serving as jurors. It was objected that the act was in violation of the constitution in that it deprived the accused of a trial by an impartial jury of the vicinage. The court say it has never been doubted that the Legislature could prescribe the legal qualifications of jurors, and that no good reason can be assigned why they may not exercise the same right as respects territory. (State v. Jones, 8 Robinson, 582.) By the Constitution of the United States it is declared that "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law." Yet Section 802, U. S. Rev. St., which provides "that jurors shall be returned from such parts of the district, from time to time, as the court shall direct, so as to be most favorable to an impartial trial, and so as not to incur an unnecessary expense, or unduly burden the citizens of any part of the district with such services," has been upheld, and the practice of selecting jurors from particular parts of the district, to the exclusion of others, approved. (U. S. v. Stowell, 2 Curt. C. C., 153; State v. Kemp, *supra*.) So, in the territories, a jury summoned under the territorial laws from only one county in the district has

been held to be a jury from the vicinage in the trial of causes arising under the laws of the United States, although the crime is charged to have been committed in another county of the district. (U. S. v. Mays, 1 Idaho, 763.) Authorities upon this proposition might be multiplied indefinitely, if it were deemed necessary.

Moreover, as stated in State v. Kemp, *supra,* there seems to be no case squarely adjudicating the unconstitutionality of a law or practice in accordance with which a jury for a court possessing county jurisdiction is selected from one or more parts of the county, to the exclusion of the rest. Shaffer v. State, 1 How. (Miss.), 238, is cited, as we understand, in support of the proposition. But it does not seem to have been so regarded by the Supreme Court of that State. For, in a later case, it was objected that the drawing of a special venire from a box containing three hundred and fifty names selected and furnished by the Board of Supervisors, under a statute giving them that power, abridged the constitutional right of the prisoner to "be allowed his chance with all the qualified persons in the county." The court say this assignment of error is without merit; that the constitution of that State entitles the accused to a trial by an impartial jury of the county, but it is left to the Legislature to prescribe the qualifications of jurors and to regulate the mode of obtaining a jury of the county; and that the mode provided by the code is free from constitutional objection. No reference is made to the case in 1 Howard. (Cooper v. State, 59 Miss., 267.) Zanone v. State, 97 Tenn., 101, is also relied upon, as we understand, as supporting the proposition that a statute providing for procuring a jury from a designated portion of the county, to the exclusion of another portion, is in violation of the constitution. But, while there is some reference in the opinion to the constitutional guaranty of the right to a trial by a jury from the body of the county, we think nothing more was decided than that the method adopted for securing a jury in that case was in violation of the law of the

State upon the subject. And the court say that the decision in Ellis v. State, 92 Tenn., 85, where it·is held that "if the jury is made up of citizens of any part of the county, who are otherwise qualified, the requirement of the constitution is complied with," has no application to the case. And we think none of the cases cited go further than to decide that a jury obtained in violation of the method prescribed by law is not a legal jury. They are not authority upon the matters under investigation in this inquiry.

Upon the other hand, the cases other than those already referred to are quite numerous which sustain the views we have expressed; among them the following: Gardiner v. People, 6 Park. Cr., 191; U. S. v. Wan Lee, 44 Fed., 707; State v. Arthur, 39 Ia., 631; U. S. v. Chaires, 40 Fed., 820; State v. Stover, 134 Mo., 607; Copp v. Henniker, 55 N. H., 179; Trimble v. State, 2 Greene (Ia.), 404; Colt v. Eves, 12 Conn., 243.

It is also to be observed that a number of states have provisions similar to what is known as the five-mile jury box under our system; as, for instance, Montana, from which our act was taken; New York, which provides that jurors in certain cases shall be taken from the city or town·in which the court is held; and South Carolina, whch has a provision that, under certain circumstances, the panel shall be filled from jurors residing within seven miles of the town where the court is held. Indeed, the provision in numerous jurisdictions, for fillng panels from the bystanders, by no means meets the requirement that the jury shall come from the body of the county, if such requirement is to be construed as insisted upon by the prosecuting attorney in this case. Yet such provisions have never been successfully attacked, so far as we have been able to ascertain.

It is also to be observed that the provisions of the present statute, in the particulars to which objection is made, are not new in the legislation of this State and Territory. By the laws in force, at the revision of 1887, it was made the duty

of the Board of County Commissioners to select two hundred persons for jury duty, and they were forbidden to choose any who served as jurors at the preceding term of the District Court, and any who appeared from the assessment books, or were otherwise known to be disqualified. And, furthermore, when, by reason of there being no panel, or the panel being incomplete, it became necessary to· draw names from the list, and any person drawn resided at such a great distance from where the court was held that it was deemed impracticable or inconsistent with the public interest to summon him, the court was authorized to direct that he be not summoned, and its finding upon that subject was made conclusive. The purpose of the latter provision was evidently the same as that sought to be accomplished by the "five-mile jury box" of the present law, and its effect was the same in depriving the accused of a trial by a jury drawn from the body of the county in the sense insisted upon by the prosecuting attorney.

With reference to the specific objection that the statute, when it requires the commissioners to make a list of the names of all persons whom they "believe" to be competent, is unconstitutional, because the selection is left to the discretion of those officers and is, therefore, not from the body of the county, not much need be said. The constitution does not point out the method by which jurors shall be selected, and, as. a matter of necessity, it must be provided for by the Legislature if the common law method is to be abandoned. It cannot be claimed that a person accused of crime has any constitutional right to any particular method of selecting a jury. He is entitled only to an impartial jury of the county, and, within those constitutional limitations, the Legislature may define the qualifications of jurors, make such regulations as it may deem wise to determine who are qualified, and provide for their selection and attendance. It is conceded in the argument that if the officers were required to select from the assessment roll the persons possessing the qualifications of

jurors there could be no objection to the statute upon this ground. No distinction is possible between the two propositions. Some officer or body of officers must, of necessity, determine the preliminary question who are proper persons to be enrolled upon the list of jurymen, and they can only perform that duty by enrolling those whom they "believe" to possess the qualifications prescribed by law. At the common law the duty was imposed upon the sheriff, and, under any system, some officer or body of officers must be charged with it.

It may be said, in conclusion, that one evident and prominent purpose of the statute is to avoid the evils whch experience has shown to attend, in many cases, the issuance of an open venire. Under the method prescribed, an open venire to complete a trial jury can never issue until not only the panel for the term, but also jury box number three is entirely exhausted. And it would seem that, for completing the panel for the term, an open venire can never issue under any circumstances; for the four first boxes are intended to contain the names of all the qualified jurors of the county. From those boxes the regular panel when incomplete is, at all times, to be filled, and the open venire is thus eliminated from the system.

Recurring to a matter already adverted to in a former part of this extended opinion, the jury commissioners, while officers of the county, elected by the people, are also an aid and agency of the court for the transaction of much of its most important business, and as such are under its direction and control. (In re Brennen, 73 N. Y. Supp., 689; Kennedy v. O. S. L. Ry. Co., 18 Utah, 325.) The District Court is one of general common law jurisdiction, and has inherent power to provide the necessary agencies, such as juries and the like, for transacting its business according to law. (Rockford Ins. Co. v. Nelson, 75 Ill., 552.) And, bearing in mind the evident purpose of the statute to eliminate the open venire from the jury system of the State, we think when it appears

to the court that the jury commissioners have failed in the performance of their duty substantially and so as possibly to encumber the execution of the law, according to its spirit and purpose, we are of the opinion that it is in the power of the court to require the commissioners to perform their duty and return a list such as the law requires. If there should be no legal objection to the list returned other than that it is incomplete, there seems to be no. reason why it should be quashed or set aside, but it should be completed to comply with the law.

It will be observed that under the system outlined in the statute the original drawing for the panel for the term is in all cases obtained from the list contained in box number one taken from the entire mass of jurors in the county, and never from the five-mile jury box, thus preserving, out of abundant caution, any possible right of a defendant to a jury from the whole body of jurymen in the county, and the five-mile jury box is only resorted to in completing the panel or in obtaining a jury for the trial of a particular cause.

It is believed that all the questions properly before us for decision have been sufficiently answered. An answer to questions eight and nine becomes unnecessary, for the reason that we hold the sections designated to be valid and not in violation of the constitution.

POTTER, C. J., and KNIGHT, J., concur.