## JAMES BROWN v. STATE.

No. A-3165.   Opinion Filed September 21, 1918.

(174 Pac. 1102.)

1. **JURY—Selection of Jury Lists.** A substantial compliance with the act providing for the selection of a list of petit jurors is sufficient to prevent the setting aside of a verdict returned in a criminal case.

2. **SAME—Right to Jury Trial.** Where the record shows that one of the persons selected by the jury commissioners from the tax rolls of the county for service in the district court was a minor at the time of his selection in January, 1917, but re·ched the age of 21 years and became a qualified elector of the county before the time he was impaneled and sworn to try the cause, **held**, that the mere fact that at the time of his selection he was not qualified for jury service did not operate to deprive the defendant of a fair and impartial jury to try said cause, or deny to him the right of trial by jury, as guaranteed by section 19, part 2, Constitution.

3. **SAME.** Statutes providing for the selection of electors for jury service have never been regarded as an essential element of the right of trial by jury, and the method of selection is entirely within the control of the Legislature, provided the fundamental requisite of impartiality is not violated.

4. **SAME—Competency of Individual Juror.** The question of competency of an individual juror to try the issue in a criminal cause relates to the time said juror is impaneled and sworn to try said cause.

5. **TRIAL—Qualifications of Jury—Time for Making Objections.** The provision in section 3690, Rev. Laws 1910, that "no name of

a person who does not possess the qualifications of an elector" shall be placed upon the jury list by the jury commissioners, is directory, and aimed to reduce to a minimum the likelihood of having served and summoned for jury service persons not qualified under the law. Where, by reason of inadvertence or mistake, the name of a person who is a taxpayer, but a minor, is selected and placed upon the jury list, the defendant may not raise the question that said juror was not lawfully selected for the first time after verdict has been rendered. Had said juror been a minor at the time the jury was impaneled and sworn to try the cause, a challenge for cause upon the grounds stated in the second subdivision of section 5857, Rev. Laws 1910, should have been interposed as to him: otherwise, there is a lack of diligence to discover the disqualification.

*Appeal from District Court, Muskogee County;*
*R. P. de Graffenried, Judge.*

James Brown, alias Jerry Moore, was convicted of murder, and sentenced to suffer death, and appeals. Judgment affirmed.

The defendant, James Brown, alias Jerry Moore, was convicted in the district court of Muskogee county, Okla., of the crime of murder, and sentenced to suffer death, for killing one Glenn Jacobs in said county on the 19th day of May, 1917. The facts are substantially as follows:

About 7:30 or 8:00 o'clock on said day the deceased, Jacobs, together with his father-in-law, G. W. Turnball, left Muskogee, driving southeast in a two-horse wagon. They were going fishing, and after they had proceeded about three or four miles, and after it was dark, they were met in the road by two negro men, who presented pistols at them and demanded that they stop and hold up their hands. This demand was immediately complied with, and one of the negro men then commenced to search the wagon and the pockets of both Jacobs and Turnball, securing some money and other things of value. About the time Jacobs thought they were through with the search, he

started to put his hands down, and according to the testimony of Turnball the defendant, who was then holding a pistol against the body of Jacobs, fired the same, inflicting a mortal wound, as the result of which said Jacobs died within a very short time. It is also shown that these two negroes held up and robbed, immediately preceding and in the same locality where this killing took place, some three or four other persons by like means and methods.

The defendant took the witness stand in his own behalf and admitted the robbery, but contended that his companion in crime, Sam Shaw, fired the shot that killed Jacobs. Immediately after the killing the defendant and Shaw escaped and "were on the scout" for about ten days; the defendant being captured at Ft. Gibson, Okla. The evidence in the case on the part of the state clearly establishes a willful and deliberate murder perpetrated in the commission of a robbery, and the defendant's own testimony amounts virtually to a plea of guilty.

*Kelly Brown*, for plaintiff in error.

*S. P. Freeling*, Atty. Gen., and *R. McMillan*, Asst. Atty. Gen., for the State.

MATSON, J. But one alleged error is relied upon for a reversal of this judgment. It is contended:

"That the jury that tried the defendant was improperly selected, drawn, and impaneled, for the reason that the name of the juror A. E. Cole was placed on the list or panel from which the jury in this case was drawn, and said juror was selected and qualified as one of the 12 men that rendered the verdict herein; the said A. E. Cole not being a qualified elector at the time his name was placed on the jury list."

· No challenge was interposed to the panel on this ground, nor to the individual juror for cause. The alleged error was first raised in the motion for new trial, wherein it is stated that the said jury was improperly drawn, selected, and placed on the jury list, and that said fact was unknown to the defendant and to his counsel until after the verdict was rendered. In support of the motion for new trial the defendant introduced as witnesses J. B. Cole, father of A. E. Cole, and also A. E. Cole, the juror, and said witnesses were examined in open court and testified as follows:

"By Mr. Brown: Q. State your name. A. J. B. Cole. Q. Is A. E. Cole your son? · A. Yes, sir. Q. Where do you live? A. Porum, Okla.. Q. Does your son live in Porum?. A. No, sir; out in the country near by. Q. Porum is the post office? A. Yes, sir. Q. How long has Mr. A. E. Cole been living separate and apart from you? A. For three years. Q. You stated he was your son? A. Yes, sir. Q. Do you know his age? A. Yes, sir. Q. How old is A. E. Cole at this time? A. Twenty-one years old past. Q. When did he arrive at the age of 21? A. The 1st day of July. Q. This year? A. Yes, sir. Q. First day of July, 1917, was 21 years of age? A. Yes, sir. Q. That is his correct age? A. Yes, sir. Q. Do you know by your being his father? A. Yes, sir. Q. And that is his age? A. Yes, sir.

"By Mr. Cotton: Q. You also have the original entry made by you in the Bible? A. Yes, sir. Q. I will ask you if this is it? A. Yes, sir; this is it right here. Q. 'Albert Early Cole, July 1st, 1896?' A. Yes, sir. Q. This is the entry made in your Bible? A. Yes, sir. Q. By whom was it made? A. By myself. Q. At the time or shortly after his birth? A. I do not remember the exact date, but shortly afterwards.

"Mr. Brown: It is agreed by the county attorney, in behalf of the state, and by the attorney for this de-

fendant, that the juror A. E. Cole was 21 years of age on the 1st day of July, 1917, and was not 21 years of age at any time previous to that. (Witness dismissed.)

"Whereupon A. E. Cole was duly sworn according to law and testified as follows, to wit:

## "Direct Examination of A. E. Cole.

"By Mr. Kelly Brown: Q. State your name. A. A. E. Cole. Q. Are you the same A. E. Cole who served on the jury in the case of State of Oklahoma v. James Brown, alias Jerry Moore? A. Yes, sir. Q. That was on July 2 and 3, 1917? A. Yes, sir. Q. At that time how old were you? A. I was 21 years old. Q. Twenty-one the 1st day of July previous? A. Twenty-one the 1st of July. Q. The trial commenced on Monday morning? A. Yes, sir. Q. The jury panel of which you were a member were all examined by the court before you were called to the jury box? A. I never understood. Q. All the members of the jury list or panel in the court room were asked questions about your competency before you were called into the box? A. I was asked no questions.

"Judge de Graffenried: Didn't I ask all the jurors, 'Gentlemen of the jury, are you all qualified voters in Muskogee county?' A. Yes, sir. Q. And to that question what did you answer? A. I answered 'yes.'

"Judge de Graffenried: Mr. Cole, you are a taxpayer in this county? A. Yes, sir.

"Judge de Graffenried: On the tax rolls? A. Yes, sir. (Witness dismissed.)

"Mr. Brown: I would like for the record to show counsel for the defendant is permitted to substitute the evidence taken in lieu of the affidavit attached to his motion.

"Judge de Graffenried: The substitution is made by the court. Is that all?

"Mr. Brown: Yes, sir.

"Mr. Cotton: Yes, sir.

"The above and foreging is all the evidence introduced on the hearing of the supplemental motion for new trial, and the same is a full, true, correct, and complete transcript of all the proceedings had on the supplemental motion for new trial."

The record discloses that the said A. E. Cole became 21 years of age on July 1, 1917, the day before this case was called for trial; that he was a qualified elector in Muskogee county at the time he was impaneled as a juror in this case; but counsel for defendant contend that defendant was not accorded the right of trial by jury by 12 qualified men, because under the laws of this state a juror must be a qualified elector at the time his name is placed upon the jury list by the jury commissioners, and that, the list from which Cole's name was selected having been prepared in January, 1917, the said Cole was not at that time qualified for jury service.

Section 3690, Rev. Laws 1910, in substance provides that the jury commissioners shall meet in the office of the county clerk on the first Monday in January and July of each year, and at such other time as the district judge may order, and shall proceed to select for the district court one list of names of not less than 200 persons *from the names on the tax rolls of the county,* and that no name of any person who does not possess the qualifications of a juror as prescribed by this chapter shall be placed on the jury list.

Section 3698, Id., provides:

"All male citizens, residing in this state, having the qualifications of electors, of sound mind and discretion, of . good moral character, not justices of the Supreme Court or judges of the Criminal Court of Appeals, district court,

superior court or county court, sheriffs or deputy sheriffs, constables, jailers, licensed attorneys engaged in the practice of law, habitual drunkards, not afflicted with a bodily infirmity amounting to a disability, and who have never been convicted of any infamous crime or served a term of imprisonment in any penitentiary for the commission of a felony, are competent jurors to serve on all grand and petit juries within their counties: Provided, that persons over sixty years of age, ministers of the gospel, and county or district officials, practicing physicians, undertakers, pharmacists, teachers in public schools, postmasters, and carriers of the United States mail, members of the National Guard, and all members of good standing of any regularly organized fire department, if they claim their exemption shall not be compelled to serve as jurors in this state."

Section 1, art. 3, of the Constitution, provides the qualification of electors as follows:

"The qualified electors of the state shall be male citizens of the United States, male citizens of the state, and male persons of Indian descent native of the United States, who are over the age of twenty-one years who have resided in the state one year, in the county six months, and in the election precinct thirty days next preceding the election at which any such elector offers to vote: Provided, that no person adjudged guilty of a felony after the adoption of this Constitution, subject to such exceptions as the Legislature may prescribe, unless his citizenship shall have been restored in the manner provided by law; nor any person, while kept in a poorhouse or other asylum at the public expense, except Federal and Confederate ex-soldiers; nor any person in a public prison, nor any idiot or lunatic, shall be entitled to vote at any election under the laws of this state."

Section 3701, Rev. Laws 1910, provides as follows:

"A substantial compliance with the provisions of this chapter shall be sufficient to prevent the quashing or set-

ting aside of any indictment of a grand jury chosen hereunder, unless the irregularity in drawing, summoning or impaneling the grand jury resulted in depriving a defendant of some substantial right, but such irregularity must be specifically presented to the court on or before the cause is first set for trial. A substantial compliance with the provisions of this chapter shall be sufficient to prevent the setting aside of any verdict rendered by a jury chosen thereunder, unless the irregularity in drawing and summoning or empaneling the same resulted in depriving a party litigant of some substantial right: Provided, however, that such irregularity must be specifically presented to the court at or before the time the jury is sworn to try the cause."

On behalf of the defendant it is contended that the provisions of the statute relative to the drawing, selecting, and impaneling of a petit jury are mandatory, and that the mere fact that the juror A. E. Cole was placed upon the jury list for the district court at a time when he was under the age of 21 years operated to deprive the defendant of the right of trial by jury as guaranteed by section 19, art. 2, state Constitution, in that he was deprived of a jury of 12 qualified men under the law, and this fact was unknown to him until after the verdict was rendered. The position taken that the jury in this case was improperly drawn and selected is not supported by the evidence adduced in support of the motion for new trial. It clearly appears from the testimony of the juror A. E. Cole that in January, 1917, his name appeared on the tax rolls of Muskogee county, and that he was at that time a taxpayer in Muskogee county. There is no contention or proof that the jury commissioners drew the name of A. E. Cole from any list other than that provided by law for the selection of jurors, namely, the tax rolls of the county. The fact, therefore, that the name of this

juror by inadvertence or mistake was placed upon the jury list was a mere irregularity in selecting the list, of which irregularity the statute has provided a remedy in section 5857, Rev. Laws 1910, designating general causes for challenge to individual jurors, the second subdivision of which provides:

"A want of any of the qualifications prescribed by law to render a person a competent juror, including a want of knowledge of the English language as used in the courts."

It was with knowledge of all these safeguards before them that the Legislature provided in section 3701, *supra,* that any irregularity in the drawing, summoning, and impaneling of a trial jury must be specifically presented to the court at or before the time the jury is sworn to try the case; and in the case of *Moore v. State,* 4 Okla. Cr. 213, 111 Pac. 822, where it was contended that the jury impaneled to try the cause was not lawfully drawn, this court said:

"The defendant could not raise this question for the first time after the verdict had been rendered."

And also in the case of *John Hopkins v. State,* 4 Okla. Cr. 194, 108 Pac. 420, 111 Pac. 947, wherein the defendant was convicted of murder, with the death penalty, it was held that:

"A substantial compliance with the act providing for the selection of grand jurors is sufficient to prevent the setting aside of the indictment on motion to quash" —it being further held that a grand juror drawn from the list of jurors for the county court, instead of from the list of jurors for the district court, as required by law, was a substantial compliance with the act.

In this case there is really no showing at all of irregularity or misconduct on the part of the jury commissioners in selecting the jury list from which the name of this juror was drawn. It also appears from the record that the juror A. E. Cole, at the time he was impaneled and sworn to try this case, was a qualified elector and taxpayer of Muskogee county. Wherein, then, was this defendant deprived of any substantial right by reason of the fact that said A. E. Cole sat upon the jury that tried his case? Did the mere irregularity of placing the name of a minor on the list some six months before the trial deprive him of that right? Certainly not. The fact that a want of any qualifications prescribed by law is made a ground of general challenge to the individual juror impresses this court with the fact that the question of the qualifications of the individual members of the jury is to be determined from the moment the jury is impaneled to try the cause. It is then that inquiry is had and the competency of each juror for trial service adjudicated.

The question of competency to try the issue cannot relate back to the time the jury commissioners select the names from the tax rolls. Otherwise one rule would obtain as to talesmen, and another and different rule as to jurors selected from the regular list. Such is apparently not the law. The provision that in selecting the list of jurors "no name of a person who does not possess the qualifications of an elector" shall be placed thereon, is a directory provision of the statute, aimed to reduce to a minimum the likelihood of having served and summoned for jury service persons not qualified under the law. No perfect system of selecting a list of jurors has ever been, or ever will be, evolved by human ingenuity.

However numerous the safeguards and precautionary provisions of such statutes, mistakes are likely to occur; hence the courts have almost universally construed such statutes as directory merely, and not mandatory (16 R. C. L. sec. 48; *Queenan v. Territory,* 11 Okla. 261, 71 Pac. 218, 61 L. R. A. 324; *Wadsworth v. State,* 9 Okla. Cr. 84, 130 Pac. 808; *Hopkins v. State, supra),* and that a substantial compliance with the terms of such statutes will prevent the quashing of an indictment by a grand jury or setting aside of a verdict by a petit jury in a criminal case *(Wadsworth v. State, supra; Hopkins v. State, supra).* And, further, the general rule is to the effect that statutes providing for the selection of electors for jury service have never been regarded as an essential element of the right of trial by jury, and the method of selection is entirely within the control of the Legislature, provided only that the fundamental requisite of impartiality is not violated. 16 R. C. L. 51, and cases cited.

In this case the defendant was not deprived of a jury of 12 impartial and qualified electors, either by any action of the jury commissioners in selecting the list of jurors or by the fact that the juror A. E. Cole was impaneled for service at the trial. We consider the alleged assignment of error without merit.

The judgment of conviction, assessing the death penalty, is affirmed, and the warden of the state penitentiary at McAlester is hereby ordered and directed to carry into effect against this defendant the judgment and sentence of the district court of Muskogee county that he suffer death. Said penalty to be executed on the 8th day of November, 1918, in the manner provided by the laws of this state.

DOYLE, P. J., and ARMSTRONG, J., concur.