PEOPLE OF PORTO RICO, Plaintiff and Appellee, v. VÍCTOR ANTONIO CARBONELL, Defendant and Appellant.

No. 2308. Argued January 26, 1925.—Decided July 13, 1925.

1. MANSLAUGHTER—JURORS—DISTRICT PANEL—JURY COMMISSIONERS—DEPARTURE FROM STATUTE IN SELECTING NAMES.—When in forming the panel for the district the jury commissioners do not draw the names from the list of each municipality as required by the statute and this omission is made deliberately in order to avoid the selection of certain names, such departure from the statute is fatal.

2. ID.—INSTRUCTIONS TO JURY—EXCEPTION.—Although on appeal an instruction which is fundamentally wrong will be considered, specific exception should be taken in the trial court.

District Court of Mayagüez, Angel Acosta, J. Judgment of conviction of voluntary manslaughter. *Reversed and remanded.*

*Pedro Baigés Gómez* and *R. Rivera Zayas* for the appellant. *José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

In each judicial district of the Island the jury list from which the regular panels are drawn consists of 300 names. These 300 names are selected by commissioners proportionately from each municipality of the district according to the population of the said municipality. In the present case the commissioners selected exactly the number of persons to form the list that corresponded to each municipality but without any prior drawing. The appellant, after due challenge, complains of error in the manner of the drawing. It also appears that the reason that the commissioners, following instructions from the court, proceeded about their duties in the form indicated was because the judge of the

District Court of Mayagüez was desirous that certain jurors who had rendered unsatisfactory verdicts should be excluded from the list and from the panel of the district.

Section 194 of the Code of Criminal Procedure, as amended, governs the matter. It reads as follows:

''Section 194.—The said commissioners shall then prepare a general final list of three hundred jurors for the judicial district which they shall sign and certify to, conformable to the following: Each commissioner shall prepare a provisional list of one hundred names of persons of his respective municipality, who shall be qualified to act as jurors in the judicial district, for which purpose they shall take as a basis the list of taxpayers of the said municipality, which list shall be furnished by the Treasurer of Porto Rico. The commissioners shall then determine, as far as possible, the proportional number which corresponds to each municipality out of the three hundred jurors, taking as a basis therefor its population pursuant to the last census of the United States; and the number so determined shall be drawn by lot by one of the commissioners, in the presence of the others, from among the one hundred names on the provisional list of the respective municipality.''

On May 29, 1919, section 186 of the Code of Criminal Procedure was amended to authorize, among other things, any male citizen of the United States to be a juror. In other words, by section 186 property qualifications were omitted and a general manhood duty or privilege of jury service was made the law in Porto Rico. Therefore, the provision in section 194, *supra,* requiring the provisional list to be taken from a tax list to be furnished by the Treasurer was repealed and the jury commissioners were left free to select the necessary names from the body of the community. Otherwise section 194 remained in full effect at the time of the trial of this case. The authorities which we shall transcribe later on show that in some states the law for the selection of jurors is only considered directory, but in others it is mandatory. Unimportant or inconsiderable variations may be made, but in its general method the statute must be followed. For example, the jury commis-

sioners in this case did not meet together to select the names. The mere informality of not having met together, provided the commissioners otherwise performed their duties, would have been a mere irregularity and in the absence of a showing of prejudice would have been disregarded. In *People* v. *Searcey,* 121 Cal. 1, 53 Pac. 559, 41 L.R.A. 257, it was held that if a few names appeared on the jury list which were not on the assessment rolls, the departure was not fatal. The omission of some qualified persons, if done in good faith, is no ground. *State* v. *Bolln,* 10 Wyo. 439, 70 Pac. 1.

[1] The Law is summed up in 35 C. J. 262, as follows:

"Selection of Names—a. In General. The commissioners in selecting the names to compose the jury list have full power to decide as to who are fit to serve as jurors or whether certain persons possess the qualifications prescribed by the statutes, and in the absence of any showing of fraud or corruption their decision will not be interfered with; but the list must be selected without distinction from all the persons qualified to serve as jurors, and known to be so qualified, and where the statute specifically prescribes the class of persons from whom the list is to be selected, a failure to select the list from this class is a fatal irregularity. The commissioners, in the exercise of their discretion, may omit from the jury list all persons exempt by law, as well as those whose business or avocation is such that it is reasonably probable that an excuse from jury service would be granted, such as lawyers, ministers, doctors, etc. But if the commissioners intentionally, although from wrong interpretation of the law, omit from the list a large number of those whom they believe to be qualified, the list is invalid. It does not invalidate the list or furnish any ground of challenge to the array that the commissioners by accident and without fraudulent design returned on the list more or less than the proper number of names, or that some of the names were of persons disqualified or exempt from jury duty. The fact that the commissioners occupied an unnecessarily long time in preparing the list does not affect its validity, but merely renders them liable to punishment for failing to exercise due diligence. Where the list is made out in the first instance by the selectmen and then reported to a meeting of the town, the

town may adopt it in whole or only in part and substitute other names in the place of those rejected.''

In Ruling Case Law, Vol. 12, pp. 1016 and 1017, in regard to grand juries, it is said:

"Drawing.—The numerous decisions passing upon the question of the legality of a grand jury not selected according to statute, though not uniform in upholding the legality of such a grand jury, are not necessarily conflicting. Each case turns upon the extent to which a particular statutory provision may be departed from without affecting the legality of the grand jury. This is determined chiefly by the character of the statute, that is, whether it is mandatory or directory, which in this instance depends more upon the purpose of the statute than upon its language. If the mode of selection is contrary to the provisions of a mandatory statute, the purpose of which is to prevent fraud and unfounded prosecutions, the grand jury is usually held to be illegal. The reason upon which this rule is based is that to permit grand juries to be selected otherwise than in accordance with the statute regulating their selection would open the way for the evils which it is the object of the statute to prevent. Thus, it has been held that failure to give notice of the drawing as required by statute will invalidate the drawing. On the other hand, when the provisions of the statute are merely directory, particularly when the chief purpose of the prescribed method is to distribute equally the burden of jury service, a departure from that method does not, in the absence of fraud or prejudice to the interests of the party who questions the regularity of the selection, render the grand jury illegal. The reason of this rule is that as the grand jurors do not try the case, but merely charge the accused, the manner of their selection is of no consequence to him, he being entitled to claim only fair and impartial grand.jurors who possess the necessary qualifications, whereas it is of great consequence that the administration of justice shall not be delayed by mere technical objections. Such statutes need not be followed with technical or literal strictness. A substantial compliance is all that is required, and mere irregularities in the drawing and selection do not invalidate the grand jury's ,action. Most of the illustrations of this rule indicate that the departure from the statutory requirements was not prejudicial to the accused. Thus the fact that the list of jurors was not certified, or not certified at the exact time, that the number from which the grand

jury was drawn exceeded or was less than the statutory number, that there was a variance or clerical error in writing the name of a grand juror, and similar departures from the letter of the statute, have been considered not fatal. Fraud vitiates a drawing, but fraud must be shown clearly. The fact that one of the grand jurors requested the sheriff to place him on the jury does not establish fraud in the absence of evidence of corruption or conspiracy between the juror and the sheriff. The drawing must be made by an authorized person. A drawing has been held valid in but few cases when made by a deputy of the statutory officer. So, when the statute prescribed selection by chance by a person designated by the trial judge, a grand jury selected by the judge himself and composed of only such persons as he desires cannot return a valid indictment.''

This was with regard to grand juries and has only an indirect bearing.

16 R.C.L. 234, 235, is as follows:

''51. In General.—The mode of selecting electors for jury service has never been regarded as an essential element in the right of trial by jury. Different modes have been adopted and have prevailed at different times, as were best suited to local requirements and so the method of selection is entirely within the control of the legislature, provided only that the fundamental requisite of impartiality is not violated. The court generally possesses inherent power to provide itself with a jury, and while the legislature may aid and regulate the exercise of this power, the act of selection is a court function, cognate with that of hearing and deciding, and is not 'administrative' in origin, purpose, or character in the true sense of that term. However, the act of drawing a jury or preparing a jury list is often regarded as a mixed judicial and ministerial function, properly performable by officers of either class. The general method prescribed is mandatory, and must be followed; but many provisions of the statutes are directory and not mandatory. Inadvertent failure to comply with every directory provision will not vitiate a panel, unless it is made manifest that some omission prejudicial to the appellant has occurred, the most important consideration being that the panel shall be drawn, and not arbitrarily selected.''

The cases, besides the ones already cited, that bear out

the foregoing texts or favor appellant are *State* v. *Squaires,* 2 Nev. 226; *Moore* v. *Navassa Guano Co.,* 41 S. E. 296; *Shepherd* v. *State* (Cal.), 10 Ann. Cases, 964; *Teat* v. *Land,* 135 La. 782, 66 So. 199, Ann. Cases 1916 C, 1208; *Glass* v. *State,* 82 So. 469; *State* v. *Newhouse,* 29 La. Ann. 824; *State* v. *Love,* 106 La. 658; *Brown* v. *State,* 14 Okla. Crim. 609, 174 Pac. 1102; *Ebers* v. *Mt. Clemens Sugar Co.,* 148 N. W. 810, 122 Mich. 449; *People* v. *Wong Bin,* 139 Cal. 66; *State* v. *Deselles,* 90 So. 773.

As was said in *Green* v. *State,* 59 Md. 123, 43 A. R. 542, the general method is mandatory, otherwise the statute would be merely nugatory.

The statute clearly says that the number of names corresponding to each municipality should be chosen by lot from 100 names to be selected by the commissioners from each municipality. The statute prescribes two steps,—first, the listing of 100 names and then the drawing of the due proportion for each municipality. The statute also says that the drawing shall be by lot. Not only was the general method of the statute not followed, but the departure was a deliberate one in order to avoid the selection of certain names for the jury list. There are cases which hold that if there is a positive attempt to exclude certain people on the ground of color, politics or race, this would subject a panel to a challenge for cause. How much of this principle is indigenous in the law or is made the subject of federal statutes we need not stop to inquire. Certain it is that in the present case no attempt was made to follow the statute. The challenge was made in due time and in due order, and while the case is a close one we feel bound to sustain the objection.

Objection was made to the following instruction:

"The defense and the accused have come before you and said: 'I am the man who killed him; I am the author of the unlawful death of Alfredo Martínez.' It is a fact which the defense admitted; it is a fact which the accused admitted, but he says and

it is my duty also to charge you and you must later bear these facts in mind: the accused says: 'Yes, I killed him unlawfully; I took the life of Alfredo Martínez, but I did it because I came in contact with him and in a sudden quarrel killed him' and he alleges, 'I killed him, I was compelled to take the life of my adversary, to take the life of Alfredo Martínez, in order to save my own life under the law of necessity, *i. e.*, in lawful self-defense.''

[2] No specific objection was made below. In various decisions we have held that while we will notice a fundamentally bad instruction, in general a specific exception should be noted. Here the rest of the instructions showed the nature of self-defense. We cannot agree with appellant that the court told the jury that the killing was illegal.

For the error in selecting the jury the judgment is reversed and the case sent back for further proceedings.

### DISSENTING OPINION OF MR. CHIEF JUSTICE DEL TORO.

I dissent from the majority opinion. I have examined the record carefully and in my opinion the judgment appealed from should be affirmed.

I entirely agree that the evidence introduced shows a departure from the method prescribed by law on the part of the jury commissioners in selecting the jurors for the district of Mayagüez, but the record also shows that there was no fraud or wrong intention and that the purpose was to select a body of citizens qualified to administer justice. The jury had proceeded in such a manner in the previous year that their action in the particular cases cited by the district judge fills the minds of those having knowledge of it with just indignation. This being the case, if ever the jurisprudence establishing that provisions of law of the kind not followed by the commissioners are directory and not mandatory may have plausible application, it would be in this case.

The method prescribed by law for the selection by the commissioners of 300 jurors for each district by preparing

previously a list of 100 for each town or city within the district is such that it can not be followed in many instances. There are towns of Porto Rico (Hormigueros, for example) in which it would be very difficult, if not impossible, to make conscientiously a list of 100 persons qualified to act as jurors, and there are cities like San Juan from which, because of the number of its inhabitants, should be selected perhaps more than 100 of the list of 300 in the final computation. Can the names be drawn in this latter case?

If it had been shown that in acting as they did the commissioners had the intention of prejudicing the rights of the defendant, it is clear that the judgment should be reversed, but, we repeat, they did not act against the defendant. They proceeded with the intention of selecting the best jurors of the district before whom not only this defendant but all other persons accused of crime should be tried during the period for which they were selected.

The important thing is that accused persons be tried before an impartial jury and nothing, absolutely nothing, in the record shows that the jury in this case (selected in accordance with the law from among 300 qualified persons of the district) was not impartial.