El Pueblo de Puerto Rico, demandante y apelado, *v.* Víctor Antonio Carbonell, acusado y apelante.

No. 2308.—*Visto:* Enero 26, 1925. *Resuelto:* Julio 13, 1925.

1. Jurados—Lista de Jurados para el Distrito—Comisionados de Jurados—Preparación de la Lista—Desviación del Estatuto en Cuanto a la Selección de Nombres.—Cuando en la formación del panel del distrito los Comisionados de Jurados no verifican el sorteo previo que requiere la ley de la lista correspondiente a cada municipio, y la desviación se hace deliberadamente para evitar la selección de ciertos nombres, dicha desviación del estatuto es fatal.

2. Derecho Penal—Juicio—Objeciones a Instrucciones o a la Negativa a Darlas, y Excepciones—Excepciones Específicas.—Aunque en apelación se considerará una instrucción que fundamentalmente es mala, en general debe hacerse una excepción específica en la corte inferior.

3. Derecho Penal—Apelación y Error, y Certiorari—Revisión—Instrucciones al Jurado.—Considerada la instrucción objetada en el caso de autos, *se resolvió:* que por ella la corte inferior no manifestó al jurado que la muerte fué ilegal.

Sentencia de *Angel Acosta,* J. (Mayagüez), condenando al acusado por delito de homicidio voluntario. *Revocada y devuelto el caso.*

*Pedro Baigés Gómez* y *R. Rivera Zayas,* abogados del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

En cada distrito judicial de la Isla la lista de jurados de la cual son sorteados los paneles regulares, consta de 300 nombres. Estos 300 nombres son elegidos por comisionados proporcionalmente de cada municipio del distrito de acuerdo con la población de dicho municipio. En el presente caso los comisionados seleccionaron exactamente el número de personas para formar la lista que correspondía a cada municipio, pero sin hacer un sorteo previo. El apelante, después de la debida recusación, se queja de haberse cometido error en la forma de verificar el sorteo. También consta que la razón de que los comisionados, siguiendo las instrucciones de la corte, procedieron en cuanto a sus deberes en la forma indicada, fué porque el Juez de la Corte de Distrito de Mayagüez deseaba que ciertos jurados que habían rendido veredictos no satisfactorios fueran excluídos

de la lista y del panel del distrito. El artículo 194 del Código de Enjuiciamiento Criminal, como quedó enmendado, regula la cuestión. Dicho artículo es como sigue:

"Art. 194.—Dichos comisionados prepararán entonces una lista general definitiva de trescientos jurados para el distrito judicial, la cual firmarán y certificarán, ajustándose a lo siguiente: Cada comisionado hará una lista provisional de cien nombres de personas de su respectivo municipio, que estén capacitados para actuar como jurados en el distrito judicial, para lo cual tomarán como base la lista de contribuyentes del expresado municipio, que le será suministrada por el Tesorero de Puerto Rico. Los comisionados entonces determinarán hasta donde sea posible, el número proporcional que de los trescientos jurados corresponda a cada municipio, tomando como base para ello, su población, según el último censo de los Estados Unidos, y el número así determinado, se extraerá a la suerte por uno de los comisionados, en presencia de los demás, de entre los cien nombres en la lista provisional del respectivo municipio."

En 29 de mayo de 1919 el artículo 186 del Código de Enjuiciamiento Criminal fué enmendado para autorizar, entre otras cosas, a cualquier ciudadano varón de los Estados Unidos para poder ser jurado. En otras palabras, por el artículo 186 los requisitos referentes a la propiedad fueron omitidos y un deber o privilegio general de varón para el servicio de jurado quedó convertido en ley en Puerto Rico. Por tanto, la disposición del artículo 194, *supra,* que exige que la lista provisional para la cual sirve de base la lista de contribuyentes suministrada por el Tesorero quedó derogada y los comisionados de jurado quedaron libres para seleccionar los nombres necesarios de toda la comunidad. Por lo demás, el artículo 194 continuó en completo efecto en la fecha del juicio de esta causa. Las autoridades que luego transcribiremos indican que en algunos Estados la ley para la selección de jurados se considera únicamente como directiva, pero en otros es imperativa. Pueden hacerse variaciones que son poco importantes o insignificantes, pero en su forma general el estatuto debe ser observado. Por

ejemplo, los comisionados de jurado en este caso no se reunieron para seleccionar los nombres. La mera informalidad de no haberse reunido, con tal que los comisionados por lo demás cumplieran con sus deberes, hubiera sido una mera irregularidad y a falta de alguna demostración de prejuicio no hubiera sido tomada en consideración. En el caso de *People* v. *Searcey,* 121 Cal. 1, 53 Pac. 559, 41 L.R.A. 257, se resolvió que si algunos nombres apareciesen en la lista del jurado que no constaban en la relación de tasación, la desviación no era fatal. La omisión de algunas personas calificadas, si se hace de buena fe, no constituye fundamento. (*State* v. *Bolln,* 10 Wyo. 439, 70 Pac. 1.)

La ley está resumida en el volumen 35 de Corpus Juris, pág. 262, a saber:

"*Selección de Nombres*—a. *En General.* — Los comisionados al elegir los nombres para formar la lista de jurados tienen completa facultad para resolver respecto a quienes están capacitados para servir de jurados o si ciertas personas poseen las condiciones prescritas por los estatutos, y a falta de alguna demostración de fraude o corrupción no se intervendrá con su decisión; pero la lista debe ser seleccionada sin distinción de todas las personas calificadas para servir de jurados, y así tenidas por calificadas, y cuando el estatuto específicamente prescribe la clase de personas de la cual la lista puede ser seleccionada, el dejar de elegir la lista de esta clase es una irregularidad fatal. Los comisionados, en el ejercicio de su discreción pueden omitir de la lista del jurado a todas las personas exentas por la ley, así como a todas aquellas cuyo negocio o vocación es tal que es razonablemente probable que se le concedería una excusa del servicio del jurado, tales como los abogados, ministros, doctores, etc. Pero si los comisionados intencionalmente, aunque debido a una interpretación errónea de la ley, omiten de la lista un gran número de aquellas personas que creen ellos estar calificadas, la lista es nula. No invalida la lista o sirven de fundamento de recusación al jurado en conjunto que los comisionados por casualidad y sin un designio fraudulento endosaran en la lista más o menos del debido número de nombres o que algunos de los nombres eran de personas descalificadas o exentas del deber de jurado. El hecho de que los comisionados emplearon un tiempo in-

necesariamente largo en preparar la lista no afecta a su validez, sino que meramente lo hacen responsable a un castigo por dejar de ejercitar la debida diligencia. Cuando la lista se hace primero por los encargados de la selección y entonces se envíe a una reunión del Pueblo, éste puede adoptarla en totalidad o solamente en parte y sustituir otros nombres en lugar de los rechazados.''

En Ruling Case Law, tomo 12, pág. 1016, 1017, en relación a los Grandes Jurados (*Grand Juries*) se dice lo siguiente:

"*Sorteo.*—Las numerosas decisiones que resuelven la cuestión de la legalidad de un Gran Jurado que no ha sido seleccionado de acuerdo con el Estatuto, aunque no son uniformes en sostener la legalidad de tal gran jurado, no están necesariamente en conflicto. Cada caso gira sobre el límite hasta el cual un determinado precepto estatutorio puede desviarse sin afectar a la legalidad del gran jurado. Esto se determina principalmente por la naturaleza del estatuto, esto es, si es mandatorio o directivo, el cual en este caso depende más del objeto del estatuto que de su texto. Si el modo de seleccionar es contrario a las disposiciones de un estatuto mandatorio cuyo propósito es impedir el fraude y los procesos infundados, se resuelve generalmente que el gran jurado es ilegal. La razón en la cual se funda esta regla es que el permitir a los grandes jurados que sean seleccionados de otro modo que no sea de acuerdo con el estatuto que regula su selección abriría el camino para los males cuya prevención es el objeto del Estatuto. Así pues, se ha resuelto que el dejar de notificar el sorteo como lo requiere el estatuto invalidará el sorteo.` Por otra parte, cuando las disposiciones del estatuto son meramente directivas, particularmente cuando el fin principal del método prescrito es distribuir igualmente la carga del servicio de jurado, una desviación de ese método, a falta de fraude o perjuicio a los intereses de la parte que impugna la regularidad de la selección no hace ilegal el Gran Jurado. La razón de esta regla es que como los grandes jurados no juzgan el caso sino que meramente formulan el cargo contra el acusado, la forma de su selección no tiene consecuencia alguna para él, teniendo él derecho a pedir únicamente grandes jurados imparciales y justos que poseen las condiciones necesarias, mientras que es de gran consecuencia que la administración de justicia no sea demorada por meras objeciones técnicas. Tales estatutos no han de seguirse con ri-

gorismo técnico o literal. Un cumplimiento sustancial es todo lo que se requiere, y las meras irregularidades en el sorteo y selección no invalidan la acción del Gran Jurado. La mayoría de los ejemplos de esta regla indica que la desviación de los requisitos estatutorios no era perjudicial al acusado. Así el hecho de que la lista de jurados no estuviera certificada o que no se certificara al debido tiempo, que el número del cual el Gran Jurado fué sorteado excedía o era menor del número determinado por la ley, que hubo un cambio o error material al escribir el nombre de un gran jurado, y desviaciones semejantes del texto del estatuto, han sido consideradas como que no son fatales. El fraude vicia el sorteo, pero debe expresarse claramente. El hecho de que uno de los grandes jurados pidió al márshal que lo colocara en el jurado no establece fraude a falta de prueba de corrupción o conspiración entre el jurado y el márshal. El sorteo debe hacerse por una persona autorizada. Con excepción de pocos casos se ha sostenido que un sorteo es válido cuando se hace por un delegado del funcionario legal. Así pues, cuando el estatuto prescribía la selección a la suerte por una persona designada por el juez sentenciador, un gran jurado seleccionado por el mismo juez y compuesto sólo de tales personas como las que él desea, no puede presentar una acusación válida.''

Esto fué con respecto a Grandes Jurados y sólo tiene una relación indirecta.

En 16 Ruling Case Law, 234, 235, se dice lo siguiente:

''51. *En General.* El modo de seleccionar electores para el servicio de jurado nunca se ha considerado como elemento esencial al derecho de juicio por jurado. Distintos modos han sido adoptados y han prevalecido en diferentes épocas, según convenía mejor a las necesidades locales y así el método de selección está enteramente dentro del control de la Legislatura, con tal únicamente que el requisito fundamental de imparcialidad no se infrinja. La corte generalmente posee el poder inherente para obtener un jurado, y aunque la legislatura puede ayudar y regular el ejercicio de esta facultad, el acto de la selección es una función de la corte, semejante a la de oir y decidir y no es administrativa en su origen, objeto o naturaleza en el verdadero sentido del vocablo. Sin embargo, el acto de sortear un jurado o preparar una lista de jurados a menudo se considera como una función judicial y ministerial mixto y es ejecutada debidamente por funcionarios de cualquier clase. El método

general prescrito es mandatorio y debe seguirse; pero muchas prescripciones de los estatutos son directorias y no mandatorias. La omisión inadvertida en cumplir con toda disposición directoria no viciará un panel a menos que resulte manifiesto que alguna omisión perjudicial al apelante ha tenido lugar, siendo la consideración más importante que sea sorteado el panel·y no elegido arbitrariamente.''

Los casos, además de los ya citados, que sostienen el texto anterior o favorecen al apelante son los de *State* v. *Squaires,* 2 Nev. 226; *Moore* v. *Navassa Guano Co.,* 41 S. E. 296; *Shepherd* v. *State* (Cal.), 10 Ann. Cases, 964; *Teat* v. *Land,* 135 La. 782; 66 So. 199, Ann. Cases, 1916 C 1208; *Glass* v. *State,* 82 So. 469; *State* v. *Newhouse,* 29 La. Ann. 824; *State* v. *Love,* 106 La. 658; *Brown* v. *State,* 14 Okla. Crim. 609, 174 Pac. 1102; *Ebers* v. *Mt. Clemens Sugar Co.,* 148 N. W. 810, 122 Mich. 449; *People* v. *Wong Bin,* 139 Cal. 66; *State* v. *Desselles,* 90 So. 773.

Como se dijo en el caso de *Green* v. *State,* 59 Md. 123, 43 A.R. 522, el método general es mandatorio, de otro modo el estatuto sería meramente ineficaz.

El estatuto expresa claramente que el número de nombres correspondientes a cada municipio debe elegirse a la suerte de los cien nombres que han de ser seleccionados por los comisionados de cada municipio. El estatuto prescribe dos medios: primero, la formación de una lista de cien nombres y entonces el sorteo de la debida proporción para cada municipio. El estatuto también dice que el sorteo será a la suerte. No solamente no ha sido observado el método general del estatuto sino que la desviación fué deliberada para evitar la selección de ciertos nombres de la lista de jurado. Hay casos que sostienen que si existe una tentativa positiva para excluir a ciertas personas debido al color, a la política o raza, esto someterá a un panel a una recusación fundada. Hasta donde este principio es inherente en la ley o es materia de estatutos federales no tenemos necesidad de indagar. Es cierto que en el presente caso no hubo tentativa alguna

por seguir el estatuto. La recusación se hizo oportunamente y en su debido orden y aunque el caso es uno que resalta a la vista nos sentimos obligados a sostener la objeción.

[2, 3] Se hizo objeción a la siguiente instrucción:

"La defensa y el propio acusado se han adelantado y ante vosotros dicen, yo soy el que he matado, yo soy el autor de la muerte ilegal de Alfredo Martínez, es un hecho que aceptó la defensa, es un hecho que aceptó el acusado pero él dice y es mi deber también instruiros y vosotros debéis tener luego en cuenta esas circunstancias: el acusado dice, sí, yo le he dado muerte ilegal, yo he privado de la vida a Alfredo Martínez, pero si le privé de la vida, fué porque me encontré con él, y en una súbita pendencia lo maté, y alega, lo maté, me ví precisado a tomar la vida de mi contrario, a tomar la vida de Alfredo Martínez, para salvar mi propia vida por una ley de necesidad, o sea por la legítima defensa."

No se formuló ninguna objeción específica en la corte inferior. En varias decisiones hemos resuelto que aunque consideraremos una instrucción que fundamentalmente es mala, en general debe hacerse una excepción específica. Aquí el resto de las instrucciones mostraba la naturaleza de la defensa propia. No podemos convenir con el apelante en que la corte manifestó al jurado que la muerte fué ilegal.

*Por el error en seleccionar el jurado se revoca la sentencia y devuelve el caso a la corte inferior para ulteriores procedimientos no incompatibles con la opinión.*

OPINIÓN DISIDENTE DEL JUEZ PRESIDENTE SR. DEL TORO.

Disiento de la opinión de la mayoría. He examinado cuidadosamente los autos y a mi juicio la sentencia apelada debe confirmarse.

Estoy enteramente conforme en que la prueba aportada revela una desviación por parte de los comisionados para la elección de los jurados del distrito de Mayagüez, del método prescrito por la ley, pero los autos también revelan que no

hubo fraude, ni dañada intención, sino propósito de elegir un cuerpo de ciudadanos capaces de administrar justicia. Había procedido de modo tal el jurado en el año anterior, que su actuación, a virtud de los casos concretos que en los autos se citan por el propio juez de distrito, deja en el ánimo del que se entera de ella una justa indignación. Siendo ello así, si alguna vez la jurisprudencia que establece que preceptos de la naturaleza de los que dejaron de seguirse por los comisionados, son directivos y no mandatorios, tendría una aplicación plausible, sería en este caso.

El método prescrito por la ley para que los comisionados elijan 300 jurados en cada distrito preparando antes listas de 100 para cada pueblo o ciudad de los que forman el distrito es tal, que necesariamente tiene que dejar de seguirse en muchas ocasiones. Hay pueblos en la Isla, como Hormigueros, por ejemplo, en los que debe ser muy difícil, quizá imposible, poder formar a conciencia una lista de 100 personas capacitadas para actuar como jurados, y existen ciudades como San Juan a las que, dado su número de habitantes, quizás corresponden en el cómputo final más de 100 en la lista de 300. ¿Puede verificarse el sorteo en ese último caso?

Si se hubiera demostrado que al actuar en la forma que lo hicieron los comisionados tuvieron la intención de perjudicar al acusado, claro está que procedería la revocación de la sentencia, pero ellos, repetimos, actuaron no en contra del acusado, sino con ánimo de elegir los mejores jurados del distrito para que juzgaran tanto al acusado como a todos los otros acusados durante el período de su elección.

Lo importante es que el acusado sea juzgado por un jurado imparcial y nada, absolutamente nada en los autos indica que el jurado que juzgó al acusado en este caso—elegido de acuerdo con la ley de entre 300 personas capacitadas de su distrito—no lo fuera.